## MOW v. McGRATH.
### No. 8967.

Circuit Court of Appeals, Ninth Circuit.
March 1, 1939.

Oliver Dibble, Samuel I. Jacobs, and G. C. Ringole, all of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and A. J. Zirpoli, Asst. U. S. Attys., all of San Francisco, Cal. (A. J. Phelan, U. S. Immigration and Naturalization Service, of San Francisco, Cal., on the brief), for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from an order denying a petition for a writ of habeas corpus.

Appellant, an alien, after a hearing before officials of the Department of Labor, had been ordered deported. On application for the writ, the record of this hearing was transmitted to the trial court. It discloses that in April, 1937 appellant was indicted in the United States court for the Northern District of California on two counts, the first of which charged him with the unlawful sale and distribution of a derivative and preparation of opium. The second count charged that he "did fraudulently and knowingly conceal and facilitate concealment of said lot of yenshee more particularly described in Count One of this indictment, and a lot of certain derivatives and preparations of opium, to wit, yenshee and smoking opium, in quantities particularly described as 117 grains yenshee contained in two bindles, and 227 grains smoking opium contained in a teacup and two jars, and the said yenshee and smoking opium had been imported into the United States of America contrary to law, as said defendant then and there well knew." The first

count of this indictment was dismissed and appellant pleaded guilty to the second. He was sentenced to six months in the county jail and a small fine imposed.

The indictment was found under § 2(c) and (f) of the Jones-Miller Act, as amended, 42 Stat. 596, 21 U.S.C.A. § 174, shown on the margin.[1] The deportation order was made pursuant to the Act of February 18, 1931, 46 Stat. 1171, 8 U.S.C.A. § 156a, reading as follows:

"Any alien (except an addict who is not a dealer in, or peddler of, any of the narcotic drugs mentioned in this section) who, after February 18, 1931, shall be convicted and sentenced for violation of or conspiracy to violate any statute of the United States taxing, prohibiting, or regulating the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, or any salt, derivative, or preparation of opium or coca leaves, shall be taken into custody and deported in manner provided in sections 19 and 20 of the act of February 5, 1917, entitled 'An Act to regulate the immigration of aliens to and the residence of aliens in the United States' [sections 155 and 156 of this title]."

The appellant, on the hearing before the immigration authorities, where he was represented by counsel, denied that he is addicted to the use of narcotics, stating that he had used opium or yenshee two or three months. He testified, "I just took it for fun—for pastime—and I haven't been sick since I have been in the jail. I am not accustomed to the drug to the extent that I feel sick if I am deprived of it." The Department found that appellant is not an addict and it is not seriously urged here that he is such within the meaning of the exception contained in the statute. Ow Tai Jung v. Haff, 9 Cir., 89 F.2d 329.

■■ The facts quite clearly bring the deportation order within the verbiage of the Act of February 18, 1931. Appellant was convicted and sentenced for a violation of a "statute of the United States * * * prohibiting, or regulating the * * * importation * * * of opium." He contends, though, that it was the intent of Congress to exempt from the operation of the act those who merely use the drugs mentioned, and for this purpose have them in their possession. The legislative history of the statute is appealed to as disclosing such intention.

As originally introduced in the lower house of Congress, the act (H. R. 3394) included in the descriptive matter the words "possession" and "use". By amendment these words were stricken. The bill was further changed by inserting the parenthetical exception relating to addicts and by substituting a requirement of conviction and sentence in lieu of the mere finding of a violation or conspiracy to violate the described statutes, as was originally proposed.[2]

As applied here, however, the statute is sufficiently unambiguous to make recourse to its legislative history of doubtful propriety. And even if its history be resorted to appellant is no better off. He was not convicted on a charge of possession or use, but of concealing and facilitating the concealment of drugs known to have been unlawfully imported. We find nothing in the Congressional reports or in the proceedings leading up to the passage of the act indicating an intent to exempt from deportation an alien convicted of the charge to which appellant pleaded guilty.

Affirmed.

[1] "If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

[2] 71st Congress, 1st Session, Record Vol. 71, Part 2, p. 1952; 71st Congress, 2d Session, Record Vol. 72, Part 11, p. 12453; 71st Congress, 3d Session, Record Vol. 74, Part 4, pp. 4486, 4487; 71st Congress, 3d Session, Record Vol. 74, Part 5, pp. 4935, 4936.