**UNITED STATES of America**

v.

**Cortez ASHTON.**

**Crim. No. 1524–69.**

United States District Court,
District of Columbia.

Oct. 8, 1970.

Donald T. Bucklin, Asst. U. S. Atty., Washington, D. C., for the United States.

Matthew Black, Jr., Washington, D. C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Since the decision of the United States Court of Appeals in Watson v. United States, No. 21,186 (July 15, 1970), various situations have arisen requiring trial judges to interpret and implement the court's indicated views. More than usual attention has been given by the bench and bar to dicta in this *en banc* decision which dealt forthrightly with difficult problems of criminal responsibility and the treatment of narcotic addicts. The instant case involves a challenge to a pending indictment, rather than an effort to reopen a guilty plea or conviction, and hence the full range of substantive and procedural questions raised by the Court of Appeals are before the Court.

At a hearing on his motion to dismiss the indictment, defendant showed that he was addicted to heroin at the time of his arrest. He stands indicted on three counts, charging violations of 26 U.S.C. § 4704(a), 21 U.S.C. § 174, and 33 D.C. Code § 702(a) (4). Defendant was arrested after a search of his residence pursuant to a valid warrant disclosed packages containing in all about one gram of heroin, 165 empty capsules containing traces of heroin, and the usual cutting and cooking paraphernalia. A search of the defendant's person at the time of his arrest yielded 47 tablets of Desoxyn, which are the subject of the third count.

The Government has no proof of selling that can be presented to a jury, although a "buy" by a controlled anonymous informer was used to support the search warrant. It opposes dismissal on the grounds that the defendant was by his own evidence "trafficking" in drugs by occasionally giving and receiving heroin to and from a friend and fellow addict, and that defendant at the time of his arrest possessed more heroin and related gear than it is claimed would be expected of a mere user.

The evidence at the hearing showed that defendant had been addicted off and on since 1950, and consistently since 1968. His habit required upwards of $200 per week, and in the neighborhood of 36 caps a day when available. Defendant was in stress after eight to ten hours without injection, and he experienced drastic withdrawal symptoms when deprived. He claims never to have sold heroin, and to have bought his supply on the street. Desoxyn, an amphetamine, was used to increase his high or extend it when insufficient heroin was available, or when it was of poor quality. Defendant has been in jail since May for bail jumping, and is not now a user.

Though the ruling of the Court of Appeals on the issue of addiction as a defense was purely advisory in the *Watson* case, its mandate was clear:

So it is that, if *Robinson's* [Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)] deployment of the Eighth Amendment as a barrier to California's making addiction a crime means anything, it must also mean in all logic that (1) Congress either did not intend to expose the non-trafficking addict possessor to criminal punishment, or (2) its effort to do so is as unavailing constitutionally as that of the California legislature. (Slip opinion at 19.)

The following excerpt from *Watson* will serve to place the issues tendered on this motion into focus:

For the future, the addict, whose acquisition and possession of narcotics is solely for his own use and who wishes to defend on these grounds, is surely not at a loss to know how to do so. His challenge is not merely to greater, as opposed to lesser, degrees of criminal punishment. To the extent that he wishes to assert that the statutes are not to be read as applicable to him, the primary attack should * * * be by a motion to dismiss. Such a motion would presumably make an alternative claim of the constitutional defectiveness, under *Robinson,* of the statutes as applied to him.

In this fashion important issues * * * can hereafter be meaningfully pursued by a defendant who is prepared to take his stand upon these positions and, where necessary to the exculpatory approach being advanced, to proffer the factual foundations for them. A defendant raising these matters as affirmative defenses at trial presumably must bear the burden of going forward with evidence which places him in the category of an addict in possession of narcotics solely for his own use. If the prosecution disputes that evidence by a showing of its own, the burden of persuasion beyond a reasonable doubt would appear to rest upon it. The analogy of the traditional insanity defense is instructive in this regard.

If a court should rule as a matter of law that the statutes either do not, or cannot constitutionally, encompass non-trafficking possessors for personal use, then an indictment which does not allege acts of trafficking arguably would be subject to dismissal as not stating a crime which the court has jurisdiction to try. (Slip opinion at 21–23, footnote omitted.)

While the court indicates in a footnote to this excerpt that the District Court may under Rule 12(b) (4) defer ruling until trial, there is sound reason not to follow such a course in this instance. The fact of defendant's addiction is uncontroverted, and the Government does not, in the Court's view, have sufficient proof to carry its inferential claim of "trafficking" to the jury. Moreover, since problems of prejudice and self-incrimination would appear to necessitate bifurcation when requested, trial time will be greatly economized by acting on the motion before trial.

Accordingly, this Court finds that defendant is an addict, that the heroin he possessed was for his own use, and that he is a non-trafficking possessor within the meaning of *Watson*. Congress never intended to include such a person within § 4704(a) or § 174, nor, given the holding in *Robinson, supra,* did Congress have the constitutional power to do so. Furthermore, the third count of the indictment, relating to possession of the drug Desoxyn, is governed by the rationale of *Robinson* and *Watson,* and by the holding of *Easter v. District of Columbia,* 124 U.S.App.D.C. 33, 361 F.2d 50 (1966). There is no need to review the authorities and arguments pro and con, for they have been repeatedly presented to the Court of Appeals which must ultimately resolve these issues. An ample record upon which to do so is now presented. It would be of assistance to this Court for the appeal from this decision to be expedited.

Apart from the need for a clear holding as to whether or not mere acquisition and possession of narcotics by an addict is or may constitutionally be made a crime, there are three aspects of the *Watson* dicta which need clarification by the Court of Appeals. First, if a possessor who "trafficks" in narcotics is to be prosecuted, there exists considerable uncertainty as to what constitutes trafficking. The word must be defined in terms of a precise jury instruction, and must reflect the realities of an addict's existence. It is a matter of common knowledge that most addicts sell narcotics from time to time to finance their habit, or trade heroin for the favor of food or lodging, or give drugs to friends facing withdrawal. If acts of this type constitute trafficking, the possession exemption suggested by *Watson* will prove nearly meaningless, for its primary effect will be only to alter prosecutorial techniques. On the other hand, these activities would certainly constitute trafficking where persistent and sufficient in degree. A standard must be developed to separate the non-trafficking addict from those addicts who may be punished.

Second, the trial procedures suggested by the Court of Appeals raise serious questions under the Fifth Amendment. If the defendant must go forward with evidence of addiction at a trial in order to raise his claim under *Watson,* a bifurcated trial may be required to avoid forcing the defendant to testify against himself. To handle routine heroin cases on a bifurcated basis would be a serious obstacle to efficient judicial administration. Re-examination of the *Watson* rationale may, on the other hand, lead the Court of Appeals to place the burden on the Government to prove as an essential element of every case under § 4704 or § 174 that the defendant is not an addict, or that he trafficked in narcotics. Early clarification of this point will greatly expedite disposition of the multitude of heroin cases in this Court.

Finally, the *Watson* opinion is particularly troublesome to this Court in its effect upon the availability of the Narcotic Addict Rehabilitation Act to provide

adequate treatment for heroin addicts. The problem does not exist as of this time in the present case, for defendant is in custody on a charge of bail jumping and, if convicted, will presumably be eligible for commitment under Title II of N.A.R.A. or for other rehabilitative care. Thus he is presently and may remain in a kind of structured environment necessary to allow treatment for his addiction. Since, however, the matter will arise in other cases which come before this Court, a full discussion is appropriate here.

By invalidating in part the provision in Title II, 18 U.S.C. § 4251, which makes addicts with two prior felony convictions ineligible for disposition under the Act, the Court in *Watson* cleared the way for providing rehabilitative measures to a wider class of offenders. Commitment under Title II is available, however, only to convicted offenders, and thus, under *Watson,* will no longer reach non-trafficking addicts indicted under § 4704 or § 174. Civil commitment under Title I of the Act, 28 U.S.C. § 2901 *et seq.,* would likewise seem unavailable, since eligibility depends upon the existence of a valid indictment charging an offense against the United States. Civil commitment under Title III, 42 U.S.C. § 3411 *et seq.,* is of course open to any addict, but invocation of its provisions requires a voluntary petition by the addict or by a "related individual." The ultimate effect of *Watson,* therefore, may be paradoxically to narrow the class of addicts treated under the Narcotic Addict Rehabilitation Act. The Court of Appeals might consider whether, under the analogy to the insanity defense or by interpretation of the N.A.R.A. provisions, any rehabilitative disposition may be made of addicts who gain acquittal or dismissal of an indictment under the *Watson-Robinson* rationale.

The indictment in Criminal Action No. 1524–69 is hereby dismissed. Defendant will stand trial for bail jumping in Criminal Action No. 864–70 on November 13, 1970.