**Albert Lorenzo WHEELER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5462.**

District of Columbia Court of Appeals.

Argued Dec. 22, 1970.

Decided May 5, 1971.

4. Annot., 120 A.L.R. 8, 9 ff (1939).

A. Michael Cappelletti, Washington, D. C., appointed by the court, for appellant.

Julius A. Johnson, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry, and John A. McCahill, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER, PAIR and REILLY, Associate Judges.

REILLY, Associate Judge:

This case is before us on appeal from a conviction for possession of narcotics paraphernalia consisting of two hypodermic syringes, a number of gelatin capsules, a burned bottle top "cooker", and a shoestring suitable for use as a tourniquet, in violation of D.C.Code 1967, § 22–3601, which renders unlawful the possession of implements of a crime. Appellant, having waived jury trial, was tried by the court, found guilty, and sentenced to one year in jail. A work release was ordered upon condition that appellant secure steady employment, reenter college, and undergo periodic treatment for drug addiction.

According to the testimony of the police officer who arrested him, appellant was found in a garage holding a syringe with the needle in his arm. He started to flee the scene but was overtaken and placed in custody by the officer, who then returned to the garage and picked up the items enumerated. Evidence showing that the bottle top and capsules contained traces of heroin was received. Appellant took the stand to deny that he had been in the garage, asserting that the policeman had mistaken him for another man who had jumped out of the window at the police officer's approach. He also testified that he had taken a narcotics injection about two hours before his arrest and, in reply to a direct question by the court, that he had been an addict for about 15 years.

On appeal, appellant advances two contentions—the first of which is that the

possession of narcotics instruments is not a violation of § 22–3601. His point is that this section of the code forbids the possession only of such implements as "reasonably may be employed in the commission of a crime", and that no applicable statute specifically makes the use or consumption of narcotics unlawful. While it may be true that no criminal statute prohibits "use or consumption", *in haec verba,* D.C.Code 1967, § 33–402(a), does make it unlawful— with certain exceptions not relevant here— "for any person to manufacture, possess, have under his control, sell, prescribe, *administer,* disperse, or compound any narcotic drug * * *." (italics supplied). This court has recently rejected a similar argument, holding that the combination of items, similar to those found in appellant's possession in this case, is usually employed in the administration of narcotics, conduct defined as illegal by that subsection, Mc-Koy v. United States, D.C.App., 263 A.2d 645, 649 (1970).

■ The principal issue presented to us,[1] however, is one noticed from the bench by the trial judge and adopted by counsel for appellant, *viz.,* whether the possession of instruments required by a narcotics addict to satisfy his craving for heroin can be the basis of a criminal conviction in view of the Supreme Court's holding in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). There, a state statute making it illegal "to be addicted to the use of narcotics" was pronounced unconstitutional as in conflict with the eighth amendment.[2]

Appellant argues that if statutes making addiction to narcotics a crime are unconstitutional, it must be also beyond the power of Congress to enact measures under which addicts could be convicted for conduct incidental to addiction. This is not the first time this thesis has been propounded in this jurisdiction. In recent weeks the asserted constitutional immunity of "non-trafficking" drug addicts from convictions under the section of the code on which appellant was tried as well as from convictions for violations of such related code provisions as the possession or dispensing of narcotics, § 33–402, or procuring such drugs by misrepresentation, § 33–420, has been repeatedly raised in the trial courts and on appeal to this court.

Thus far, this court has not passed on the issue. In Tompkins v. United States, D.C.App., 272 A.2d 100 (1970), and in Lyles v. United States, D.C.App., 271 A.2d 793 (1970), we noted that in the absence of proof of addiction in the trial record, it was unnecessary to reach the constitutional question. In Green v. United States, D.C. App., 275 A.2d 555 (1971), a conviction for possession of narcotics where defendant testified that he was "an addict", we also found no occasion to do so, for other testimony by the defendant together with the quantity of narcotics seized, cast considerable doubt on the premise that defendant was not "trafficking" in the narcotics taken from him.

The instant case, however, does seem to require consideration of the issue, for appellant testified without contradiction that he had been an addict for about 15 years, and the trial court so found. In response to questions prior to sentence, appellant further stated that he ordinarily took three or four shots a day, that his usual dose was three or four capsules, that he did not steal to obtain money to buy narcotics, and that he had not suffered any serious withdrawal symptoms, such as fever or chills when committed to a hospital after his arrest.

Whether or not this testimony established that appellant was an "addict" in the sense this word was used by the Supreme

---

1. The trial court's finding of guilt is not challenged on evidentiary or other grounds.

2. U.S.Const. amend. VIII: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Court in *Robinson, supra,* is not altogether clear. At one time, when the Immigration Act of 1931 exempted from the provisions requiring the deportation of aliens convicted of narcotics offense, "an addict * * * not a dealer in or peddler of any of the narcotic drugs",[3] the term received such strict judicial construction that proof of substantial deprivation of free will so far as use of the forbidden drug was concerned, was required.[4]

More recent acts of Congress relating to public rehabilitation for narcotics users disclose a less narrow definition of the term "addict". In referring to the class of persons for whose benefit these acts were intended, Congress in the Narcotic Addict Rehabilitation Act of 1966 defined as a narcotic "addict" any individual "who habitually uses any narcotic drug as defined by § 4731 of Title 26, so as to endanger the public morals, health, safety, or welfare, or who is or has been so far addicted to the use of such narcotic drugs as to have lost the power of self-control with reference to his addiction", 42 U.S.C. § 3411(a); and utilized almost the same wording in the Hospital Treatment for Drug Addicts Act for the District of Columbia, to define the term "drug user". D.C.Code 1967, § 24–602.

■ In short, Congress now seems to view persons afflicted with the narcotics habit and with criminal records similar to appellant's,[5] as well as persons whose affliction is so severe as to deprive them of self-control, as falling within the category of addicts. Thus it would appear that appellant in this case, although not so far gone in his drug habits as to lack free will, is an addict within the meaning of both the national and local rehabilitation acts.

At the threshold of our consideration of the issue, however, we note that so far as the District of Columbia is concerned, Congress made it crystal clear that its local rehabilitation enactment did not exclude from criminal punishment, persons addicted to the use of narcotics, for in the preamble to that act[6] the following sentence appears:

* * * The Congress intends that Federal criminal laws shall be enforced against drug users as well as other persons, and sections 24–601 to 24–611 shall not be used to substitute treatment for punishment in cases of crime committed by drug users.

Turning now to appellant's contention that the effectuation of such explicit Congressional intendment is barred by the eighth amendment as construed in Robinson v. California, *supra,* we have been able to find little or nothing in the text of the majority opinion to support his position. The rationale for invalidating the California statute was that addiction was an illness or a condition, punishment for which is "cruel and unusual". But the opinion specifically affirmed the right of a state to punish acts such as manufacturing, administering, possessing, using or purchasing narcotics.[7]

---

3. Immigration Act of February 18, 1931, § 156(a), 46 Stat. 1171. This exemption was repealed by the Act of June 27, 1952, 66 Stat. 279, 8 U.S.C. § 1251(a) (11).

4. It was held that persons using a drug "once or twice a week for fun", Ow Tai Jung v. Haff, 89 F.2d 329, 330–331 (9th Cir. 1937); or "not accustomed to the drug to the extent that [they] feel sick if deprived of it", Mow v. McGrath, 101 F.2d 982, 983 (9th Cir. 1939); did not fall into the category of "addicts", a term defined in another decision as "unfortunates who transgress the law in order to procure a drug which staves off torture", Nicoli v. Briggs, 83 F.2d 375, 379 (10th Cir. 1936).

5. During the period of his admitted addiction, appellant was convicted five times for petit larceny and once for assault.

6. D.C.Code 1967, § 24–601.

7. "The broad power of a State to regulate the narcotic drugs traffic within its borders is not here in issue. More than forty years ago, in Whipple v. Martinson, 256 U.S. 41, 41 S.Ct. 425, 65 L.Ed. 819, this Court explicitly recognized the validity of

In its own subsequent exegesis of *Robinson, supra*, the Court, in an opinion announcing the judgment of the Court, rejected the view that it stands for the proposition that conduct "occasioned by a compulsion symptomatic of the disease" is immune from the sanctions of a criminal statute. *See* Powell v. Texas, 392 U.S. 514, 532–533, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968).[8] The Court went on to explain—

The entire thrust of *Robinson's* interpretation of the cruel and unusual punishment clause is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing * * *. It thus does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some sense "involuntary" or "occasioned by a compulsion".

Notwithstanding the disclaimers by the highest court itself, appellant argues that the more expansive reading of *Robinson* he is urging, has been adopted by the United States Court of Appeals for this circuit in Watson v. United States, 439 F.2d 442 (D.C.Cir., 1970). The decision in that case did not turn on the issue raised by appellant, and as we said in Tompkins v. United States, *supra*, 272 A.2d at 104, " * * *

we do not read the indicated views of the majority as going so far." Although one of the concurring judges in that case did interpret the majority opinion as indicating that in future cases, no conviction of an addict for violation of the narcotics laws would be upheld where the narcotics involved were solely for his personal use, that court itself refused to reverse the conviction of such an addict in *Watson*.[9] Hence appellant's proposition never became law in this jurisdiction.

Our examination of the authorities, including some of the observations of the Supreme Court we have quoted, impel us to hold appellant's constitutional proposition untenable. Its potentially destructive impact upon the administration as well as the enforcement of the narcotics laws is plain. One district judge, who read the *Watson* opinion more broadly than this court, has written a thoughtful memorandum on some of the problems such a proposition would create at the trial level. *See* United States v. Ashton, 317 F.Supp. 860 (D.D.C.1970). One of the difficulties he envisages is the frustration of the objectives of the rehabilitation statutes.

Finally, the *Watson* opinion is particularly troublesome to this Court in its effect upon the availability of the Narcotic Addict Rehabilitation Act to provide ade-

that power: 'There can be no question of the authority of the state in the exercise of its police power to regulate the *administration*, sale, prescription and *use* of dangerous and habit-forming drugs * * *. The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question.' 256 U.S. at 45, 41 S.Ct. at 426.

"Such regulation, it can be assumed, could take a variety of valid forms. A State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, *purchase*, or *possession* of narcotics within its borders. * * *" (Italics supplied.) *Id.* 370 U.S. 660, at 664, 82 S.Ct. 1417, at 1419 (1962).

8. In *Powell*, the Court in a 5–4 decision upheld a Texas statute making it a crime "to be found in a state of intoxication in a public place". The defendant, a chronic alcoholic, asserted that *Robinson* rendered the statute inapplicable to him.

9. While the majority opinion did suggest " * * * if *Robinson's* deployment of the Eighth Amendment * * * means anything, it must also mean in all logic" that making non-trafficking addict possessors subject to criminal punishment for possession is unconstitutional, this hypothesis was prefaced in the same opinion by an expression of doubt as to whether in the absence of Supreme Court clarification, subordinate appellate courts should accord any precedential weight to *Robinson* in view of the difficulty of reconciling that decision with the subsequent holding of that Court in *Powell*.

quate treatment for heroin addicts. The problem does not exist as of this time in the present case, for defendant is in custody on a charge of bail jumping and, if convicted, will presumably be eligible for commitment under Title II of N.A.R.A. or for other rehabilitative care. Thus he is presently and may remain in a kind of structured environment necessary to allow treatment for his addiction. Since, however, the matter will arise in other cases which come before this Court, a full discussion is appropriate here.

By invalidating in part the provision in Title II, 18 U.S.C. § 4251, which makes addicts with two prior felony convictions ineligible for disposition under the Act, the Court in *Watson* cleared the way for providing rehabilitative measures to a wider class of offenders. Commitment under Title II is available, however, only to convicted offenders, and thus, under *Watson,* will no longer reach nontrafficking addicts indicted under § 4704 or § 174. Civil commitment under Title I of the Act, 28 U.S.C. § 2901 *et seq.,* would likewise seem unavailable, since eligibility depends upon the existence of a valid indictment charging an offense against the United States. Civil commitment under Title III, 42 U.S.C. § 3411 *et seq.,* is of course open to any addict, but invocation of its provisions requires a voluntary petition by the addict or by a "related individual." The ultimate effect of *Watson,* therefore, may be paradoxically to narrow the class of addicts treated under the Narcotic Addict Rehabilitation Act. * * * *Id.* 317 F.Supp. 860, at 862–863.

It would also be a paradox if the eighth amendment must be read today as invalidating the measures enacted by Congress to deter narcotics users from persisting in habits ruinous to their health and char-

acter as well as to protect the public from dangerous crimes committed by them. One of the major factors in the alarming increase in violent crimes against persons and property in this city during the past decade has been the growth of narcotics addiction. The Department of Corrections has estimated that there are 10,000 heroin addicts in the District and that the direct cost of crime related addiction in this city alone is running at the staggering figure of $300 million a year in larcenies, burglaries and robberies engaged in by such addicts to obtain money for drugs and ancillary instruments.[10] In one sample month, a testing process of persons arrested for felonies and misdemeanors (excluding traffic violations and petty offenses against municipal regulations) disclosed that 34% of those involved in criminal cases in the Court of General Sessions were users of narcotics.[11]

With a trend of this dimension confronting law enforcement officials, a construction of the Constitution nullifying statutes which now make it possible to keep appellant and more dangerous addicts from the streets, is not an appealing one. As Lord Kilbrandon said with respect to an issue of statutory construction—

When law and common sense find themselves taking different roads, it is time for law to suspect that she has missed the way. The real answer, I think, is that the line has to be drawn somewhere, and on one side of it, however artificial it may seem, legal consequences are different from what they may be on the other.[12]

Compassion for unfortunate victims of the drug traffic should not lead to judicial intrusion upon legislative policies, particularly as the enforcement of the statute challenged has not produced a result which can be characterized as cruel or even in-

10. Report to the Attorney General by the Chief Judge of the Court of General Sessions, June 9, 1970, at 19.

11. *Id.* note 10, at 15.

12. Burmah Oil Co. v. Lord Advocate [1963] Sess.Cas. 410, 435.

humane. This very case is an example of how the criminal process can benefit a narcotics offender. The court below, in the exercise of its sound discretion, suspended the imposition of a prison sentence upon the condition that appellant undergo periodic treatments designed to cure him of his addiction to heroin. It had the authority to do so, however, only because the defense raised by appellant did not render him immune from the threat of imprisonment should he fail to conform to the rehabilitation program designated by the court.[13]

Accordingly we conclude that despite appellant's admitted addiction, the Constitution did not bar his conviction for a violation of D.C.Code 1967, § 22–3601.

Affirmed.

13. *See* Opinion of Belson, J., in United States v. Williams, Sup.Ct.D.C. (Nos. 28001–70, 29895–70, 42860–70, decided March 4, 1971, reported in part in 99 D.W.L.R. 541).