**UNITED STATES of America,**
**Plaintiff,**

v.

**George E. SUTTON, Defendant.**

**Civ. A. No. 1802–71**
**(Crim. No. 749–69).**

United States District Court,
District of Columbia.

April 26, 1972.

Harold H. Titus, Jr., U. S. Atty., Earl J. Silbert, Principal Asst. U. S. Atty., Oscar Altshuler, John C. Lenahan, Asst. U. S. Attys., Washington, D. C., for plaintiffs.

James P. Riley, Washington, D. C., appointed by the Court, for defendant.

## MEMORANDUM AND ORDER

YOUNGDAHL, Senior District Judge.

The above-entitled action came on for a hearing before this Court on March 13, 1972 as a result of petitioner's motion pursuant to 28 U.S.C. § 2255. In said motion petitioner avers that 26 U.S.C. § 4704(a) either was not intended to apply to him or cannot constitutionally apply to him because he was a non-trafficking addict at the time of his arrest, and that his sentence should therefore be vacated. In the alternative pe-

titioner contends that the Court has authority to order him released on parole or granted probation and directed to participate in a Narcotics Treatment Administration program or to grant such other relief as this Court may deem just and proper.

## I

The question of whether or not 26 U.S.C. § 4704(a) was intended by Congress to apply to a non-trafficking narcotic addict, or if intended to apply could so apply without violating the cruel and unusual punishment clause of the Eighth Amendment to the Constitution was considered by the Court of Appeals for this Circuit in Watson v. United States, 141 U.S.App.D.C. 335, 439 F.2d 442 (1970). The absence of a clear trial record establishing addiction on the part of the defendant in that case mooted this crucial question in regard to the actual holding in that case. Nonetheless, there was important dicta in Judge McGowan's majority opinion which cannot be ignored. Judge McGowan said:

> [If] *Robinson's* [Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)] deployment of the Eighth Amendment as a barrier to California's making addiction a crime means anything, it must also mean in all logic that (1) Congress either did not intend to expose the non-trafficking addict possessor to criminal punishment, or (2) its effort to do so is as unavailing constitutionally as that of the California legislature. Watson v. United States, *supra*, at 452.

In future cases, Judge McGowan stated, the defendant who wishes to raise his non-trafficking addict possessor status as an affirmative defense to prosecution under § 4704(a) should do so by a motion to dismiss. The defendant would bear the burden of going forward with evidence to prove this status; and the prosecution would then have an opportunity to dispute that evidence and attempt to prove it false beyond a reasonable doubt. *Watson, supra*, at 454.

Thus the dicta in the *Watson* opinion suggests that a defendant cannot be convicted under 26 U.S.C. § 4704(a) if he is a non-trafficking narcotics addict, although the case does not so hold. That issue is now under submission to the Court of Appeals *en banc* in No. 71–1252, United States v. Moore. In United States v. Ashton, 317 F.Supp. 860 (1970) the District Court followed the clear dicta of the *Watson* opinion and dismissed an indictment under 26 U.S.C. § 4704(a) where the Government had insufficient proof to go to the jury on its claim that defendant was a trafficker. Later, in United States v. Wheeler, 459 F.2d 1228, D.C.Cir. decided February 22, 1971, the Court of Appeals affirmed without discussion and without prejudice to possible rights which may arise from the Court's ultimate decision in *Moore*, the conviction of a defendant under 26 U.S.C. § 4704(a). Thus it is presently unclear whether or not a non-trafficking addict may raise this status as a complete defense to an indictment under 26 U.S.C. § 4704(a).

## II

Turning to the issue of collateral attack, the concurring opinion of Judge Wright in the *Watson* case noted that all the appellant's contentions except his insanity defense are available to him on collateral attack. *Watson, supra*, 439 F. 2d at 458. In the dissenting portion of his opinion in which he concurred in part and dissented in part, Chief Judge Bazelon referred to the Federal Rules of Criminal Procedure 12(b) (2) and noted that "the failure of an indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

The Government in the present case, however, contends that the Supreme Court's holdings in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) and its two companion cases, McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) and Parker v. North Carolina,

397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) are apposite to the facts here and that these holdings prevent defendant from collaterally attacking his conviction which is based on defendant's voluntary guilty plea.

In those cases the defendants had made tactical decisions to plead guilty based on their then current knowledge as to the admissibility of certain confessions and the validity of a possible death sentence after conviction by a jury. Subsequently the laws upon which the decisions had been made were held unconstitutional. The Supreme Court held that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S., at 757, 90 S.Ct., at 1473.

In none of these three cases was the underlying constitutionality of the statute under which the defendant was indicted at issue. In the present case the constitutionality of an indictment under 26 U.S.C. § 4704(a) as applied to the defendant is precisely the point at issue. Therefore, this case is not analogous to the *Brady* trilogy but rather to the decisions in United States v. *Liguori*, 430 F.2d 842 (2nd Cir. 1970) and United States v. *Broadus*, 146 U.S.App.D.C. 178, 450 F.2d 639 (1971). In *Broadus* the Court of Appeals for this Circuit interpreted *Brady* as an exception to the general rule that unknown rights cannot be waived. In the *Broadus* case the right at issue went to the basic validity of the criminal law which the defendant voluntarily admitted violating. The law he pleaded guilty to was later held unconstitutional, subject to a complete defense under the privilege against self-incrimination, and the defendant collaterally attacked his conviction, attempting to have it vacated. The *Per Curiam* opinion reasoned as follows:

. . . in essence, he pleaded guilty to nothing. The Government, therefore, does not have the usual interest in punishing a man who admits committing a crime, and the guilty plea should not be allowed to accomplish what the Government could not constitutionally accomplish through legislation. United States v. Broadus, *supra*, at 641.

Likewise in the present case, the petitioner asserts that he pleaded guilty to nothing because § 4704(a) cannot constitutionally charge a crime against a non-trafficking addict. Thus it appears that if it should ultimately be found that 26 U.S.C. § 4704(a) does not charge a crime against a non-trafficking addict, then a defendant who contends that he was a non-trafficking addict would be able to collaterally attack by the use of 28 U.S.C. § 2255 his conviction under the former statute despite the fact that he had previously pleaded guilty to that charge.

III

Regarding the present case, in November, 1971, this Court delayed action on defendant's § 2255 motion and scheduled a hearing for March 13, 1972 in hopes that the Court of Appeals might have reached a decision in *Moore* by that time and that the decision in that case would be an aid in deciding this one. The March hearing was held to determine whether defendant was a non-trafficking addict at the time of his arrest.

In light of the evidence adduced at that hearing any further delay in deciding this case is unnecessary and would be unfair to the defendant. It is this Court's finding that the defendant has failed to prove by a preponderance of the evidence that he was a non-trafficking addict at the time of his arrest. The evidence adduced at the hearing pertinent to the issues of addiction and trafficking can briefly be summarized as follows:

Mr. Sutton testified that he had been a heroin addict for about twenty years and introduced records spanning several years which indicated that he had been treated for heroin addiction on many occasions. Defendant testified that at the time of arrest he had been living

with a woman heroin addict and that the narcotics seized upon the search of his room were for the joint use of defendant and the woman. Defendant further testified that he had a very heavy habit and used as much as 150 to 180 capsules per day.

A detective who had been a long time member of the Metropolitan Police Department's Narcotics Squad testified for the Government that he had been informed by a confidential source that defendant was selling narcotics. To corroborate this information he had the informant make a controlled "buy" from the defendant at defendant's apartment while the detective waited outside. Based on this information the detective obtained a search warrant for defendant's apartment. In executing the warrant defendant was arrested while attempting to dispose of some of the narcotic evidence. The police seized 7200 milligrams of heroin (the equivalent of 120 capsules of heroin) and various narcotic paraphernalia, including 21 needles, 24 hypodermic syringes, 3 bottle top "cookers", 3 plastic containers with a lubricant, and one nylon tourniquet. Much of the narcotic parphernalia was, according to the detective's testimony, packaged in manila envelopes in "kit" form,[1] and much of the heroin had been put into capsules.

Another detective who had been present at the time of the arrest testified for the Government that while the police were in the apartment a man named John Feaster had come in looking for the defendant and that Feaster told the detective that he had come to purchase narcotics.

In the face of this evidence defendant asserted that the large amount of narcotic paraphernalia was present because he and the woman addict would use a needle once and then dispose of it.

The evidence of defendant's addiction was uncontradicted by the Government and the Court thus finds that defendant was an addict at the time of his arrest. On the issue of trafficking the petitioner has failed to prove by a preponderance of the evidence that the sales he made were so small and so occasional as to fall outside a reasonable definition of trafficking. As a matter of fact the evidence shows that defendant was trafficking in a substantial manner beyond his personal needs as a drug addict. The petitioner's burden in a civil proceeding under 28 U.S.C. § 2255 is proof by a fair preponderance of the evidence. In light of the evidence of the quantity of heroin seized, the fact that it had been put into capsules by defendant, the evidence of the "controlled buy", the statement by John Feaster, the large quantity of narcotics paraphernalia seized, and the fact that much of this paraphernalia had been made into kits, the Court finds that petitioner has failed to meet his burden of proof. Therefore, petitioner's motion to vacate his conviction is dismissed, but without prejudice as to any future rights of the defendant which might arise as a result of a stricter definition of "trafficking" than this Court has applied or any other rights which might arise from the *Moore* decision or any other subsequent judicial decision.

## IV

 We now come to petitioner's alternative contention that this Court is authorized to order his release on parole or to grant him probation. This Court has no authority to order parole. To fully comprehend the probation argument a brief review of defendant's record before this court is warranted. On September 24, 1969, defendant pled guilty to a violation of 26 U.S.C. § 4704 (a), and in December, 1969, he was sentenced under 26 U.S.C. § 7237(a) and (d). The Court gave defendant a five year sentence, and pursuant to sub-section (d) he was ineligible for probation or parole because of a prior narcotics

---

1. The detective testified that "kit" or "set of works" is the colloquial expression for the implements used by narcotic addicts, including: needle and syringe, tourniquet, bottle top "cooker".

conviction. At that time the Court made clear its opposition to the mere incarceration of narcotic addicts and informed defendant that he was receiving the minimum sentence authorized by law.

At the time of sentencing defendant was not eligible for commitment to the addict rehabilitation programs provided in the Narcotic Addict Rehabilitation Act, 18 U.S.C. § 4251 et seq., because he had two prior felony convictions. In July and December, 1970, the Court of Appeals announced its decisions in Watson v. United States, *supra,* and in United States v. Williams, 143 U.S.App. D.C. 16, 442 F.2d 738 (1970). In those cases the Court held that prior felony convictions, if they involved the defendant's addiction, did not make him ineligible for the provisions of the Narcotic Addict Rehabilitation Act; and it held that this decision had retroactive effect. Pursuant to those opinions this Court vacated Mr. Sutton's sentence of December 5, 1969, and ordered him committed to Danbury Prison under 18 U.S.C. § 4252 for examination to determine if he was eligible and suitable for that program.

The examination report of May 13, 1971, determined that the defendant was an addict but that he was unlikely to be rehabilitated under that program. In light of the Danbury report this Court found in its *Memorandum and Order* of June 11, 1971, that the defendant was not likely to be rehabilitated by the Danbury program and refused to commit him to it. Instead the Court resentenced the defendant to a term of five years without probation or parole. Again the Court indicated that it was giving the minimum sentence prescribed by law.

On May 1, 1971, however, the Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. 91–513, 84 Stat. 1236, had gone into effect. By the provisions of Sec. 1101 of that Act, 26 U.S.C. § 4704(a), under which the defendant was convicted, and 26 U.S.C. § 7237, under which he was twice sentenced, were repealed. Sec. 1103(a) of the Act provides, however, that "prosecu-

tions for any violation of law occurring prior to the effective date of section 1101 shall not be affected by the repeals or amendments made by such section or section 1102, or abated by reason thereof."

In United States v. Stephens, 449 F.2d 103 (9th Cir. 1971), the Court of Appeals held that 26 U.S.C. § 7237(d), which prevented the suspension of sentence and granting of probation in case of a conviction for violation of 21 U.S.C. § 176a, was not saved by sec. 1103 of the Comprehensive Drug Abuse Prevention and Control Act or by the general savings clause provided in 1 U.S.C. § 109. Those savings clauses were intended, according to the Court, to prevent the abatement of prosecutions for crimes already charged under repealed statutes. "Prosecution ends with judgment." *Stephens, supra,* at 105. The Court further stated:

> The new Act reflects the current view that probation should be available for these offenses. Allowing it here permits a salutary tempering of the arbitrariness which otherwise would result from hewing to a cut-off date in transition from old to new law and an approach to evenhanded dispensation of justice not otherwise available. We fail to see how the public interest would be served by straining for a statutory construction that would achieve a contrary result. *Stephens, supra,* at 106 [footnote omitted].

The same reasoning that was applied by the Court in *Stephens* is clearly applicable in this case. The savings clauses prevented the abatement of defendant's conviction under § 4704(a) and they gave this Court authority to resentence the defendant under § 7237(a). However, as the *Stephens* opinion now demonstrates, this Court was not, as it then believed, without authority in June, 1971, to consider the suspension of defendant's sentence and the granting of probation.

Petitioner contends that pursuant to his § 2255 motion the Court is authorized to vacate his sentence and

resentence him. The Government argues that neither § 2255 nor Rule 35 of the Federal Rules of Criminal Procedure authorize the Court to vacate petitioner's sentence, which is more than 120 days old, and resentence him. This issue is clearly controlled by the opinion of the Fourth Circuit in United States v. Lewis, 392 F.2d 440 (4th Cir. 1968). In that case the trial judge, who the record shows was sympathetic to the defendant's plight, thought that the law obligated him to give the defendant the maximum sentence when the defendant violated the conditions of his probation. The Court of Appeals held that he was not so obligated, and that defendant could move the sentencing court for relief under § 2255, which provides in part that a court may vacate, set aside or correct a sentence if it "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The Court of Appeals held that the language "otherwise subject to collateral attack" was intended to cover this type of exceptional situation.

In the present case, this Court felt that it was bound by § 7237(d), although it was not, and it therefore did not even consider the possibility of probation with mandatory participation in a community based addict rehabilitation program. And this despite the fact that this Court has repeatedly voiced its opposition to the mere incarceration of drug addicts. Thus, following the Fourth Circuit's opinion in *Lewis* and the Ninth Circuit's opinion in *Stephens*, this Court is authorized to consider the alternative of probation which it failed to consider on June 11, 1971, when Mr. Sutton was resentenced.

Therefore, it is the finding of this Court that the petitioner is entitled to relief pursuant to 28 U.S.C. § 2255 and that this Court should and hereby does order the petitioner to appear before it in open court on Friday, May 5, 1971, at 10:00 A.M. at which time the Court may and will consider the suspension of the remaining portion of petitioner's sentence and the granting of probation with the appropriate conditions.