Sabrina A. DUPREE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 89–373, 89–446.

District of Columbia Court of Appeals.

Submitted Sept. 5, 1990.
Decided Dec. 14, 1990.

Leonard J. Bonner, appointed by the court, filed a brief for appellant.

Jay B. Stephens, U.S. Atty., John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., filed a brief for appellee.

Before BELSON, SCHWELB, and WAGNER, Associate Judges.

BELSON, Associate Judge:

Sabrina Dupree appeals from the imposition of a mandatory-minimum sentence of imprisonment of not less than four years and no more than twelve years pursuant to D.C.Code § 33–541(c)(1)(A) (1988) after she entered a plea of guilty to distribution of dilaudid in violation of the D.C. Uniform Controlled Substances Act, D.C.Code § 33–541(a)(1). At the sentencing hearing, the trial judge found that Dupree was not an "addict" and concluded that for that reason Dupree failed to qualify for the addict exception to the statutory requirement of a mandatory-minimum sentence.[1] Dupree contends that the trial judge erred in finding that she was not an addict. We agree, and therefore reverse and remand for further proceedings.

I.

At the sentencing hearing, Dupree testified in her own behalf about her addiction to marijuana, cocaine, and heroin. She testified that she had used marijuana daily for the past fifteen years and that she had used cocaine and heroin for the past ten years. Dupree stated that her habit cost her approximately $200 per day, that she could not stop using drugs, and that she needed help with the problem. She also testified that she had worked at the Veterans Hospital as a ward secretary for the eight years preceding her arrest, receiving a $450 biweekly paycheck.[2] For the past two years, Dupree testified, she had been selling drugs solely to support her drug habit. As further evidence of her addiction, Dupree rolled up her sleeves so the trial judge could see the needle marks in her arms caused by the intravenous use of heroin. Dupree also testified that she had been in an outpatient drug treatment pro-

---

1. The addict exception permits the trial judge to waive the mandatory-minimum sentence when sentencing a person who has no previous drug manufacturing or distribution convictions if that person was an addict at the time of the offense and the primary purpose of the offense was to enable that person to obtain narcotic drugs for his or her own personal use. D.C. Code § 33–541(c)(2) (1988).

2. According to the unchallenged statement of Dupree's counsel to the trial court, the presentence report, of which the trial judge took notice, disclosed that Dupree lost this job because of absences and other problems.

gram but had left when she started "hanging in the streets again, got with the wrong crowd again and ... started using drugs again."

Dupree's counsel called one other witness to support Dupree's testimony that she was an addict, a court liaison officer for the D.C. Pretrial Service Agency Adult Drug Unit. The witness testified, with reference to Dupree's drug record kept by the agency, that Dupree had tested positive for drugs six out of eight times over a period of approximately a year and a half. On all six occasions, Dupree had tested positive for cocaine. On two of those occasions, she also had tested positive for phencyclidine (PCP) and, on another occasion, she also had tested positive for opiates. The government offered no evidence to rebut the evidence that Dupree was an addict.

At that point in the proceedings, the trial judge made her findings upon the evidence presented by the defense to support the contention that Dupree was an addict. The judge pointed out that Dupree's use of drugs had not "in any way impaired her ability" to function in society, noting the fact that Dupree held a job "which required meticulous control of records in a hospital where the health and safety of the patients are at risk if she is not performing." Dupree's counsel attempted, without success, to persuade the trial judge that the use of drugs had impaired Dupree's ability by pointing to the fact that, as the presentence investigation report showed, Dupree had lost that very job due to absenteeism and other problems. The trial judge also noted that no evidence was presented of illness as the result of withdrawal, or other evidence of withdrawal patterns, and that there was no showing of a dependency pattern or anything else indicative of an addictive personality. Assuming, apparently, that all the evidence proffered by Dupree was true, the trial judge then ruled that Dupree was not an addict for purposes of the addict exception, and thus not eligible for sentencing pursuant to the exception. Somewhat inconsistently, the trial judge determined that Dupree, nevertheless, needed drug treatment as evidenced by the judge's recommendation that Dupree receive drug treatment during incarceration, followed by a period of probation with drug treatment.

## II.

▮▮▮ To qualify for the addict exception, the defendant must notify the trial judge that she seeks to be sentenced under the addict exception and she must prove her eligibility to be so sentenced. *Grant v. United States*, 509 A.2d 1147, 1154 (D.C. 1986). There is no question that defense counsel in this case satisfied the first of these requirements by notifying the trial judge at the plea proceeding that Dupree would seek to be sentenced under the addict exception. The focus of our inquiry will be on the trial judge's determination that Dupree was not eligible for the exception.

▮▮▮ To prove eligibility, the defendant must proffer evidence "that [s]he has no disqualifying convictions, [s]he was an 'addict' ... at the time of the offense, and [her] addiction was the primary purpose for the commission of [her] offense." *Id.* The proffer should contain "information about the nature of the defendant's addiction and its relationship to [her] offense," and not just consist of mere conclusory statements. *Id.* However, the defendant's burden of proof cannot be "insurmountable or tantamount to repeal of the addict exception." *Id.* at 1156. In order to establish that she is an addict, the defendant must bring herself within the applicable definition of addict which is set forth in D.C.Code § 33–501(24) (1988) as follows:

> [A]ny individual who habitually uses any narcotic or abusive drug so as to endanger the public morals, health, safety, or welfare, or who is or has been so far addicted to the use of such narcotic drug or abusive drug as to have lost the power of self-control with reference to his addiction.

## III.

▮▮▮ In this case, the trial judge seems to have focused on the latter portion of the foregoing definition, as is illustrated by her finding that Dupree had not demonstrated

withdrawal symptoms, or an "impaired ability" to maintain employment. To limit the definition of addict to those who demonstrate a physical addiction would be to misconstrue the statutory definition as well as prior cases applying the addict exception. In *Grant*, we observed that the Controlled Substances Act does not prescribe standards for finding whether the defendant is an addict or whether commission of the offense of manufacturing or distributing narcotics was for the primary purpose of supporting the defendant's drug addiction. 509 A.2d at 1151. We found guidance in the provisions of the Federal Narcotic Addict Rehabilitation Act (NARA), 18 U.S.C. §§ 4251 *et seq.* (1982), repealed by Pub.L. No. 98–473, 98 Stat. 2027, 2031 (1984), and in judicial interpretation of those provisions. Adopting the NARA standards, we indicated that the addict requirement would be satisfied if the defendant shows habitual use of narcotic drugs, even if she cannot prove physical addiction. *Grant, supra,* 509 A.2d at 1152–53. As an example, we cited *Wheeler v. United States*, 276 A.2d 722 (D.C.1971) (involving the Dangerous Drug Control Act which, as we noted in *Grant, supra,* 509 A.2d at 1152 n. 8, is similar to NARA), in which the defendant, who used heroin regularly three to four times daily, satisfied the addict requirement even though he "had not stolen money to obtain narcotics and had not suffered any serious withdrawal symptoms ... when he was committed to a hospital after his arrest." *Grant, supra,* 509 A.2d at 1153 (quoting *Wheeler, supra,* 276 A.2d at 724–25). We stressed in *Grant,* however, that the defendant's burden of proof that she is an addict is greater under the addict exception than under the Dangerous Drug Control Act or NARA because of the differing purposes of the acts, emphasizing that the addict exception was not intended "as a loophole for drug users who are also sellers." *Grant, supra,* 509 A.2d at 1153.[3] To meet her burden of proof, the defendant

must relate her habitual use of drugs to the endangerment of the public or to the loss of self-control with reference to her addiction. *See* D.C.Code § 33–501(24); *cf. Wheeler, supra,* 276 A.2d at 725. With this in mind, we review the trial judge's finding that Dupree failed to meet the definition of an addict.

Dupree's unrebutted testimony that she had a ten year history of use of marijuana, heroin, and cocaine, an expensive habit that far exceeded her disposable income, and that she had failed in a drug treatment program, provides strong support for her claim of addiction. The trial judge gave no indication that she did not credit Dupree's testimony. To the contrary, she stated that she would deal with the record as the defense put it before her.[4] The fact that Dupree tested negative two out of eight times for narcotics does not prove that she was not an addict, especially when one considers that those tests were apparently administered while she was under court order to avoid the use of narcotics. We are not in agreement with the trial judge's suggestion that Dupree's ability to maintain employment tends to negate a finding that she was an addict. It cannot be assumed that an addicted person who gets the amount of narcotics she requires cannot function in a job. Furthermore, the trial judge's reliance on the apparent absence of withdrawal symptoms seems misplaced. A defendant would not suffer any withdrawal symptoms unless she has had to go without the drug or a drug substitute, such as methadone. In sum, as to loss of the power of self control with reference to her addiction, Dupree has made a strong showing that is not significantly undermined by the fact that she maintained her job or the fact that she tested negative on two drug tests.

One aspect of Dupree's testimony is particularly relevant to the alternative means

---

3. We also noted another reason that the defendant's burden of showing eligibility is greater under the Controlled Substances Act than under NARA, *viz,* that unlike NARA, the CSA does not authorize a provisional commitment for evaluation.

4. It is not clear from the transcript whether the trial judge's statement referred to the whole of appellant's presentation or only to appellant's testimony about her employment.

of establishing addiction afforded by the statute. She testified that she spent approximately $200 a day on narcotics, but earned a paycheck of only $450 every two weeks. She raised enough additional money to finance her purchases of narcotics by selling narcotics herself. Testimony concerning such a pattern of conduct, if believed, would bring one within the definition of an addict as a person "who habitually uses any narcotic drug or abusive drug so as to endanger the public morals, health, safety, or welfare." D.C.Code § 33–501(24) (1988). It also tends to establish the nexus between the offense charged and Dupree's addiction. *See Brandon v. United States,* 553 A.2d 640, 643–44 (D.C. 1989).

Considering the entire record, and in light of this court's interpretation of the definition of an addict, *see Grant, supra,* we hold that the evidence presented by appellant, if believed, is sufficient to establish that Dupree is an addict.[5] Accordingly, we reverse and remand the case to the trial court with instructions to vacate Dupree's sentence. At a hearing on remand, the trial court should reconsider its finding that Dupree was not an addict and, if the court finds she is an addict, exercise its discretion whether to apply the addict exception as an alternative to the mandatory-minimum sentence.

We note, finally, that Dupree apparently failed to proffer evidence at the sentencing hearing that suggests a drug rehabilitation program which she is likely to complete successfully as an alternative to the mandatory-minimum sentence.[6] We held in *Grant* that a defendant seeking the addict exception should propose such a program in her proffer, but did not make the inclusion of such a proposal absolutely mandatory. 509 A.2d at 1154; *see also Banks v. United States,* 516 A.2d 524, 530–31 (D.C.

1986), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 483 (1987). On remand, the trial court should permit Dupree to include any such proposal in her proffer prior to the court's exercise of its discretion as to the application of the addict exception. Without such a proffer, it will be unlikely that Dupree will succeed in her effort to qualify for the addict exception.

*Reversed and remanded.*

SCHWELB, Associate Judge, concurring:

I join Judge Belson's opinion for the court. I write separately, however, to articulate some thoughts about the proper construction of the mandatory minimum statute and the addict exception. These thoughts may be implicit in what Judge Belson has written, but in my view they merit more explicit expression.

The mandatory minimum sentencing law restricts a trial judge's traditional sentencing discretion. It mandates comparatively harsh punishment where a greater measure of mercy was previously permissible. It limits the judge's authority to differentiate between the big drug profiteer and the little guy on the street. It is a criminal statute, and an inflexible one to boot.

We must, of course, give effect to the legislative intent, which was, in substantial measure, to take off the kid gloves when dealing with drug dealers and armed offenders. *See Lemon v. United States,* 564 A.2d 1368, 1379–81 (D.C.1989). Nevertheless, the rule of lenity[1] applies not only to interpretations of the substantive ambit of criminal proscriptions but also to the penalties they impose. *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). Accordingly, the reach of the mandatory minimum statute should not be artificially expanded beyond what its language plainly requires.

---

**5.** The other members of the majority do not disagree with the thoughts expressed in the concurring opinion.

**6.** We use the word "apparently" because the presentence report is not a part of the record, and we do not know whether it recommended a particular rehabilitation program.

**1.** "The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself." *Riggs Nat'l Bank of Washington, D.C. v. District of Columbia,* 581 A.2d 1229, 1262 (D.C.1990) (quoting *United States v. Wiltberger,* 5 Wheat (18 U.S.) 76, 95, 5 L.Ed. 37 (1820)).

*Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). Conversely, while the "addict exception" was not designed to assure leniency to sellers who also use drugs, it should not be accorded a grudging construction which few if any addicts can meet. It is important to recognize that eligibility for the addict exception does not *require* the judge to impose less than the mandatory minimum; it merely *permits* him or her to do so in an appropriate case.

Given this background, I think it would be most unfortunate to adopt a construction of the word "addict" which would exclude a defendant who, like Ms. Dupree, succeeded for some time in retaining a responsible job. As Judge Belson has explained, there is nothing in the statutory language which would compel that result. The practical consequence of such a cramped reading of the term would be to provide a user like Ms. Dupree, who has sold drugs allegedly to support her addiction, with an incentive not to try to keep a job, because the ability to continue to work would necessarily mean that a long prison term would be assured. Surely the legislative intent was not to encourage addicts to give up their ability to earn an honest day's wage, and perhaps to spend even more of their time on the street selling or juggling their poisonous wares for the purpose of obtaining another fix.

By the same token, Ms. Dupree should not be deemed ineligible for the addict exception because she had two "clean" drug tests (out of eight) while being monitored by the Pretrial Services Agency. Presumably, she was under court order at the time not to use unlawful drugs, and subject to contempt of court penalties and other unfavorable consequences if she disobeyed that directive. *See* D.C.Code §§ 23–1329, –1330 (1989). To hold that her ability to muster the strength to combat her illness and stay drug-free even for a brief period of time made her ineligible for the addict excep-

tion, so that the judge would be required to sentence her to a four-year mandatory minimum term of imprisonment, would severely punish attempts at abstinence which merit encouragement, not the certainty of years in jail. Indeed, such a rule would provide an insidious but compelling motive to an addict to give in to the perverse compulsion to use the drug and not to try to fight it. The statutory message would be: obey the court order, stay clean,[2] and spend at least four years in prison; disregard it and be eligible for probation! The Council did not say this, and I cannot believe that such a perverse and unjust sentencing scheme was intended by anyone.

To be sure, the "addict exception" itself contemplates that, in some cases, those who use drugs may be treated more mercifully than those who do not. It is unnecessary, however, to carry this proposition to extremes. The statutory definition with which we are dealing here is somewhat circular; an addict is one who, *inter alia,* has "lost the power of self-control with reference to *his addiction."* D.C.Code § 33–501(24) (1988) (emphasis added). These words do not compel us to restrict the addict exception to those who have given up the fight, lost their jobs, and tested "dirty" every single time. Courts should not divest themselves of any remaining discretion by giving the legislation so destructive a construction.

---

**2.** Even if the negative tests had occurred when Ms. Dupree was not under court order, the statute should not be so construed as to permit them to disqualify her. Well-motivated addicts progress, regress, get off the floor, and try

again. To disqualify them from more lenient sentencing because they tried to stay clean would provide a counter-incentive to abstinence, potentially negating all the good advice from those who want them to "kick the habit."