Louis GRIGGS, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CF–1445.

District of Columbia Court of Appeals.

Argued June 30, 1992.
Decided June 30, 1992.*

William S. Rhyne, Washington, D.C., appointed by the court, for appellant.

Cynthia G. Wright, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, and Anthony P. Farley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN and SULLIVAN, Associate Judges, and NEWMAN, Senior Judge.

FERREN, Associate Judge:

A jury convicted appellant, with codefendant James D. Williams,[1] of distributing cocaine in violation of D.C.Code § 33–541(a)(1) (1988 & 1991 Supp.). Appellant challenges his conviction on the grounds that (1) the trial court erred when it admitted and denied appellant's motion to strike the testimony of an expert witness describing a common drug distribution scheme involving a number of persons fulfilling different roles, and (2) the evidence was insufficient to convict appellant of aiding and abetting the distribution of cocaine. Appellant argues specifically that the expert's testimony concerning drug distribu-

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on June 30, 1992. It is now being published by direction of the court.

1. Williams' conviction was affirmed by memorandum opinion and judgment, No. 90–CF–1465, November 20, 1991.

tion schemes was not consistent with the facts actually established and that the expert was allowed to express an opinion to the jury as to appellant's guilt. Rejecting appellant's contentions, we affirm.

### I.

This appeal arises out of a cocaine sale to an undercover police officer on the evening of February 20, 1990. Officer Renee Davis approached appellant on foot and asked him if anybody was "working." Appellant responded by pointing out a building where people were coming down the stairs and said, "I know somebody up there that has it and they have some good stuff." Appellant volunteered to walk with her the one-half block to the building. Appellant called out to someone who left the building as appellant and Davis approached, "Yo, is Tink up there?" Another person came out to the stairs of the building, admonished appellant for shouting, and said "If you want it, come on up here." Appellant asked Officer Davis her name. She provided a fictitious name. Appellant told her, "Okay, I'm going to tell him you're my cousin."

After appellant and Officer Davis entered the hallway of the building, appellant told the codefendant that Davis "wanted one twenty," meaning a $20 piece of crack cocaine. Williams broke off a piece of cocaine, gave it to Davis, and took $20 in prerecorded currency from Davis in exchange. Appellant left the building with Davis. As they walked back toward where they had first encountered one another, appellant asked Davis for a part of the cocaine she had purchased. She denied his request but offered him two dollars instead. Reaching into her coat pocket, Davis attempted to tear two dollar bills in order to mark them, since the bills were her own money and not prerecorded police funds. She gave the bills to appellant and returned to her car, from which she broadcast a lookout for both appellant and the codefendant. Appellant was carrying a torn dollar bill when he was arrested. Davis identified both appellant and Williams after their arrests and in court.

### II.

At trial, Detective Norman Hill testified as an expert in the sale, packaging, and distribution of drugs in the District of Columbia. Hill testified that, in his experience, drug dealers often work in concert with one another. He described several different roles in drug distribution, including the "runner" and the "holder." Hill testified that the individual acting as a solicitor or "runner" guides purchasers to the location where drugs are sold. In exchange for this "assistance," the runner may solicit drugs or money from the buyer after the buyer obtains the drugs. Hill testified that the runner and the holder "always have an agreement worked out beforehand." Hill further testified that it is not unusual for either a runner or a holder to be "found without any drugs." He also stated that an individual participating in drug traffic would try to get rid of money on his or her person if the trafficker believed that the money had been marked by a law enforcement officer.

■ Appellant contends that the testimony concerning hiding money was inconsistent with the evidence in the case; he argues that there was no evidence that he had participated in hiding either drugs or money. He therefore asserts that the expert's testimony should have been excluded.

We disagree. " 'The trial judge has wide latitude in the admission or exclusion of expert testimony, and his [or her] decision with respect thereto should be sustained unless it is manifestly erroneous.' " *In re Melton,* 597 A.2d 892, 897 (D.C.1991) (quoting *Coates v. United States,* 558 A.2d 1148, 1152 (D.C.1989)). "Expert opinion evidence should generally be admitted if it will assist the jury to understand the facts in issue." *Coates,* 558 A.2d at 1152. We have frequently upheld the use of expert testimony to aid the jury's understanding of drug trafficking in the District. *See, e.g., Gray v. United States,* 600 A.2d 367, 368 (D.C.1991); *Irick v. United States,* 565 A.2d 26, 31 (D.C.1989). The government's expert here provided helpful testimony es-

tablishing that an individual need not be found in possession of drugs or marked money to be deemed a participant in a drug distribution scheme. The trial judge did not abuse her discretion in admitting Hill's testimony on this issue.

■ We are also satisfied that, contrary to appellant's assertion, Detective Hill's testimony about the various roles in a drug distribution operation did not amount to a direct opinion as to appellant's guilt as an aider and abettor. Hill provided assistance to the jury in understanding matters "beyond the ken of the average lay[person]." *Melton*, 597 A.2d at 897 (quoting *Dyas v. United States*, 376 A.2d 827, 832 (D.C.), *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977) (internal quotations omitted)). His testimony that runners and holders always work in concert did not amount to testimony that appellant was in fact a runner. Moreover, the trial judge instructed the jury on the purpose of expert testimony; she instructed the jury that it could accept or reject the expert's testimony and that the jury alone was responsible for deciding the case. There was no abuse of discretion in the trial court's refusal to strike Hill's testimony.

### III.

■ Finally, appellant contends that the evidence was insufficient to convict him on a theory of aiding and abetting Williams' sale of cocaine to Davis. In examining a claim of insufficiency, we must view the evidence in the light most favorable to the government. *See, e.g., Curry v. United States*, 520 A.2d 255, 263 (D.C. 1987). Appellant concedes that he aided Davis by giving her directions and accompanying her to the foyer, that he stood in the foyer with Williams and Davis while Williams sold Davis cocaine, and that he solicited payment from Davis for his assistance. But, appellant argues, because he aided Davis and not Williams, he cannot be convicted as an aider and abettor of Williams' distribution.

In support of his argument, appellant cites *Lawrence v. United States*, 603 A.2d 854, 858 (D.C.1992). In *Lawrence* we re-viewed a conviction only of possession with intent to distribute, because Lawrence had not been convicted of distribution. Lawrence had asked an undercover officer if he was "looking," escorted the officer to someone named Shorty, left the scene while the officer bought cocaine from Shorty, and then returned to ask the undercover officer for a part of the purchased cocaine as a scavenger fee. *See id.* In dicta we said that "although the evidence of appellant's participation in the cocaine sale to [the undercover officer] was insufficient to convict him of cocaine distribution," the jury could consider these facts along with other evidence demonstrating Lawrence's intent to distribute. We interpret this language to mean only that, based on the evidence, the factfinder did not conclude that Lawrence had directly sold cocaine to the undercover officer. Here, however, unlike *Lawrence*, the jury did conclude that appellant aided and abetted Williams' sale of cocaine to Officer Davis.

In *Stevenson v. United States*, 608 A.2d 732 (D.C.1992), an undercover officer noticed appellant Stevenson—who was convicted of cocaine distribution—standing a few feet away while the officer bought cocaine from another man, Washington. When the sale was completed and the officer walked away, another officer saw Washington hand Stevenson the $20 bill Washington had just received from the undercover police buyer. Stevenson was carrying the prerecorded $20 bill when he was arrested. The jury heard the testimony of the officer who witnessed the transaction and of a detective, qualified as an expert, on the "common practice [of] street narcotics dealers to act in concert as a pair." *Id.* at 733. Although we noted that mere presence at the scene of a crime is insufficient to establish criminal participation, " 'proof of presence at the scene of a crime plus conduct which designedly encourages or facilitates a crime will support an inference of guilty participation as an aider and abettor.' " *Id.* (quoting *Jefferson v. United States*, 463 A.2d 681, 683 (D.C. 1983)).

Here, appellant accompanied Davis to Williams, introduced Davis as his cousin, and waited while she purchased crack cocaine from him. This conduct clearly "encourage[d] and facilitate[d]" Williams' crime of distribution. We conclude that the jury's verdict was supported by the evidence. Accordingly, appellant's conviction is

*Affirmed.*