Katrina M. LOWMAN, Richard
Lee Carter, Appellants,

v.

UNITED STATES, Appellee.

Nos. 92–CF–238, 92–CF–481.

District of Columbia Court of Appeals.

Argued and Submitted March 17, 1993.
Decided Sept. 30, 1993.

Eugene M. Bond, appointed by the court, for appellant Lowman.

Irwin A. Goldberg, appointed by the court, submitted on the brief for appellant Carter.

Stephen J. Pfleger, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Stevan E. Bunnell, and Roy W. McLeese, III, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

Appellants Katrina M. Lowman and Richard Lee Carter were convicted by a jury of distribution of cocaine. D.C.Code § 33–541(a)(1) (Repl.1988). Lowman contends on appeal that the trial judge erred in denying her motion for a judgment of acquittal, giving an aiding and abetting instruction, and refusing to instruct the jury that certain jury instructions applied only to her and others applied only to her co-defendant, Carter. Carter contends that the trial judge also erred in denying his motion for a judgment of acquittal. We affirm.

## I.

Officer Johnson testified that while working undercover on July 30, 1991, he approached appellant Lowman in the 1400 block of Columbia Road, N.W., and asked her if she knew "anyone with some twenties," meaning twenty-dollar bags of cocaine. Lowman replied, "[y]es, I will take you up the street." Lowman then approached appellant Carter and asked him, "do you have any twenties?" He responded, "[y]es. Wait over there by the fence." Carter walked up the street and was met by a juvenile while Lowman and the officer waited by a fence. Carter waved to Lowman and the officer, and both walked towards him.

The officer testified that "Carter display[ed] a plastic bag, and the juvenile reached into the bag and retrieved a small object." Carter then proceeded to walk up the street, and the juvenile walked back towards the officer and Lowman and handed the officer "a loose rock-like substance." The officer gave the juvenile twenty dollars.[1] Lowman was standing next to the officer during this period and only walked away after the drug transaction. She did not, however, handle the drugs or the money. According to Officer Johnson and other officers, the juvenile was arrested while walking with Carter, Carter was arrested shortly afterwards, and Lowman was arrested later, separately from the juvenile and Carter.[2]

The government also offered expert testimony that a runner brings the buyer to the seller and the holder holds the drugs and/or money, but that it is not inconsistent for runners and holders to have no money or drugs on them when they are arrested.

Lowman testified that she knew the juvenile, and that she had seen Carter before July 30, 1991, but she did not know him personally. She explained that the officer approached her and asked if she knew anyone who had "20 rock." She told the officer that she did know people who were selling drugs, and she "took him down the street to show him who all out there had some." Carter and the juvenile walked by, the officer asked if one of them had drugs, and one of them said yes. Lowman was not sure whether Carter or the juvenile answered the officer. "So all of us stood.... The juvenile came back. He said officer [sic], the three of them walked that way.... I turned around ... I was going through the cut." Lowman claimed that she did not expect to receive money or drugs for helping the officer and she denied acting as a runner. She admitted, however, that she understood that a drug transaction would take place, but she claimed that she did not actually see it because she was standing behind the others.

1. The parties stipulated that a twenty dollar bill recovered from the juvenile was the same bill the officer used to pay for the drugs.

2. Officer Etienne was acting as Officer Johnson's backup at the time of the undercover buy. He testified that Carter approached Officer Johnson and Lowman and then walked over to the juvenile; Carter then left, and the juvenile walked back to the officer and Lowman.

Lowman explained that she waited with the others during the drug transaction, not because she wanted to be sure the sale went smoothly, but because she was talking to some friends. She later told a friend that "I don't know why they locked [Carter] up because I didn't see him with no drugs, I didn't see him do nothing."

Carter called a former girlfriend as a witness. The girlfriend testified that on the evening of July 30, 1991, she and her friend were with Carter and the juvenile almost continuously, except for a few minutes when she made a telephone call, until Carter and the juvenile were arrested. The girlfriend did not see Carter or the juvenile sell drugs.

Carter testified that on July 30, 1991, he went to a liquor store and played video games with the juvenile, his girlfriend, and a friend of his girlfriend's, and then all four of them walked along Columbia Road. Carter saw and spoke with another friend while his girlfriend was on the telephone. He did not see the juvenile sell drugs, nor did he speak with Lowman. According to Carter, "after the undercover officer asked if anybody had any 20's [the juvenile] said yes and stopped. I continued to walk."

## II.

■■■ *Sufficiency of the Evidence.* Viewing the evidence, as we must, in the light most favorable to the government, there is no basis on which to conclude that no reasonable juror could have found both appellants guilty beyond a reasonable doubt. *See, e.g., Green v. United States,* 608 A.2d 156, 158 (D.C.1992); *Williams v. United States,* 604 A.2d 420, 421 (D.C.1992); *Wright v. United States,* 508 A.2d 915, 918 (D.C.1986). The court must defer to the jury's right to weigh evidence, determine credibility, and draw inferences from the testimony presented. *See, e.g., Green, supra,* 608 A.2d at 158; *Wright, supra,* 508 A.2d at 918. The government is not required to rebut all possible inferences

of innocence. *See, e.g., In re T.J.W.,* 294 A.2d 174, 176 (D.C.1972).

## A.

■■■ A reasonable jury could reasonably find Lowman guilty of distributing cocaine on an aiding and abetting theory, which the government stressed in closing argument. Lowman admitted that she intended to help the undercover officer find people who were selling the illegal drugs that the officer wanted to buy. According to officers Johnson and Etienne, Lowman, after inquiring if Carter had such drugs, stayed with undercover Officer Johnson until the drug transaction was completed and then she left. The court has recently upheld a conviction under similar circumstances.

In *Griggs v. United States,* 611 A.2d 526, 527, 529 (D.C.1992), the defendant was found guilty of distributing a controlled substance, on an aiding and abetting theory, where an officer approached the defendant and asked if anyone was "working," the defendant escorted the officer to a seller, and the defendant told the seller that the officer "wanted one twenty." *Id.* at 527. The court stated that:

> [the defendant] accompanied [the officer] to [the seller], introduced [the officer] as his cousin, and waited while [the officer] purchased crack cocaine from him. This conduct clearly "encourage[d] and facilitate[d]" [the seller's] crime of distribution. We conclude that the jury's verdict [that the defendant aided and abetted distribution of a controlled substance] was supported by the evidence.

*Id.* at 529. *Griggs* is controlling here.[3] *See also Stevenson v. United States,* 608 A.2d 732, 732–33 (D.C.1992) (defendant stood nearby during drug transaction, seller immediately gave money from sale to defendant; aiding and abetting because conduct was intended to encourage and facilitate); *United*

---

3. The government also relies on *Green, supra,* 608 A.2d at 157, 160, where the defendant approached a police officer and brought the officer to a juvenile, who sold drugs to the officer. In *Carter v. United States,* 591 A.2d 233, 234 (D.C. 1991), where a defendant claimed that an officer "approached him looking for cocaine," and that

he told the officer "that he knew a friend down the hall who was selling," the court did not address whether the defendant could be found guilty under his own version of the facts, but it stated that the jury was free to believe the officer's testimony rather than the defendant's.

*States v. Monroe*, 301 U.S.App.D.C. 100, 990 F.2d 1370, 1372 (1993) (defendant asked if officer was "looking" and referred him to co-defendant); *cf. Wright, supra*, 508 A.2d at 918 (presence and holding what was probably stolen property); *In re J.N.H.*, 293 A.2d 878, 880 (D.C.1972) (presence, a "menacing" position in front of shop counter, fleeing with armed man). Although Lowman did not introduce the buyer and seller to each other, as occurred in *Griggs, supra*, Lowman brought the two together—a willing buyer to a willing seller—and she specifically asked Carter if he had any twenty-dollar rocks, the precise drugs that the undercover officer had said he wanted to buy.

The court recently stated in *Minor v. United States*, 623 A.2d 1182, 1187 (D.C. 1993) (per curiam), that "being an agent of the buyer is not a defense to a charge of distribution." In that case the defendant took a more active role than Lowman since he quoted a price to the buyer and there was "some kind of exchange" between the defendant and the seller after the sale, implying that the seller and the defendant had a relationship regarding the sale of drugs. *Id.* at 1184. Even were Lowman implicitly arguing that she was aiding and abetting the buyer rather than the seller, the jury could reasonably find that Lowman encouraged and facilitated the sale of the drugs and, therefore, that she was aiding and abetting the seller's distribution of cocaine. Lowman brought the buyer to the seller, asked the seller if he had drugs in the quantity sought by the buyer, remained during the actual sale, and left almost immediately after the sale. There was evidence that Lowman knew one of the sellers and had previously seen the other seller. While Lowman did not vouch for the buyer, as the defendant did (or represented that he could) in *Griggs, supra*, 611 A.2d at 527, it cannot be reasonably argued that in *Griggs* the defendant was assisting the seller while Lowman was aiding only the buyer.[4]

The cases on which our dissenting colleague relies are distinguishable. In several cases, the defendant merely gave the buyer the name and address of a seller and the buyer went alone to meet the seller, raising the inference that the defendant was not really concerned about whether or not the sale occurred and was only interested in helping the buyer.[5] *See infra* dissenting opinion, at 99–101. Lowman, by contrast, not only brought the buyer to the seller and

---

**4.** Arguably, there was stronger evidence in *Griggs* than in the instant case that the defendant was aiding and abetting the buyer rather than the seller because the defendant in *Griggs* sought payment from the buyer and stated that he would lie to the seller. *See Griggs, supra*, 611 A.2d at 527.

**5.** *See, e.g., Morei v. United States*, 127 F.2d 827 (6th Cir.1942); *State v. Gladstone*, 78 Wash.2d 306, 474 P.2d 274, 276–78, 279 (1970) (en banc) (no communication between defendant and seller, defendant simply gave seller's name and drew a map showing buyer where to find seller); *cf. United States v. Winston*, 687 F.2d 832, 835–36 (6th Cir.1982) (interpreting and distinguishing *Morei, supra*). Other cases are factually distinguishable. For example, in *People v. Bryant*, 106 A.D.2d 650, 483 N.Y.S.2d 117, 118–19 (N.Y.App. 1984), the court stated that the jury could not have found that the defendant acted "in concert with" the seller, but first noted that "the prosecution's case was premised on a theory" that the defendant and the seller were co-owners of the drugs "and that the two men were partners in this criminal venture." *Id.* 483 N.Y.S.2d at 118. In any event, the court viewed the defendant's statement, "see Michael and tell him I said it's ok to serve you," as an ambivalent response to the question of whether the defendant had any drugs. *Id. Daigger v. State*, 268 Ark. 249, 595 S.W.2d 653, 654 (1980), mentions accomplice liability but not an aiding and abetting theory, and it provides too few facts to determine what the defendant did at the sale location and if the defendant spoke to the sellers, for example to introduce the buyers or enquire about merchandise availability. It seems likely but not certain that the relevant defendant in *Daigger* was present during the sale. *See id.* Several of these cases do not consider an aiding and abetting theory in depth. Contrary to the suggestion by the dissent, the point is not that our aiding and abetting law differs from that of other jurisdictions, *see* dissenting opinion, *infra*, at 100 n. 19, 101 n. 20, but that in several cases relied on by the dissent the defendants were not charged with, the prosecutors did not argue, the jury apparently was not instructed on, and the appellate court did not consider, liability under an aiding and abetting theory.

*Davila v. State*, 664 S.W.2d 722, 724 (Tex.App. 1984), is inapposite because the defendant was charged with constructively transferring drugs, which was a completely different theory than that used to prosecute Lowman and which required proof that the drugs belonged to the defendant, or were under her control, and were delivered at her "instance or direction." *Id.*

asked whether the seller had what the buyer wanted to purchase, but she also waited with the buyer while the sale occurred. *See Winston, supra,* 687 F.2d at 835 (defendant was "the catalyst who put [the] transaction together," introducing the parties, quoting a price, and giving rise to an inference that he "acted with the specific intent to facilitate the sale"). Unlike our dissenting colleague, *infra* at 98, we do not read the legislative history of the District of Columbia's statute to suggest more than that the Council of the District of Columbia was distinguishing between possession and distribution, between first and repeat offenders, and between dealers who sell to adults and those who sell to minors. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY ON BILL 4–123, THE "DISTRICT OF COLUMBIA UNIFORM CONTROLLED SUBSTANCES ACT OF 1981," at 5, 6. The concern our dissenting colleague addresses, namely the distinction between a person who aids a buyer and a person who aids the seller of illegal drugs, is not found in that history. The humanitarian and policy considerations favoring the dissent's approach are, in our view, more properly for the legislature, rather than the court, to weigh in deciding whether to amend existing law. We are unpersuaded at this point that the court's interpretation of aiding and abetting might result in a buyer of illegal drugs being guilty of the crime of distribution. *See United States v. Swiderski,* 548 F.2d 445, 451 (2d Cir.1977) (one who receives drugs does not aid and abet distribution "since this would totally undermine the statutory scheme. Its effect would be to write out of the Act the offense of simple possession"); dissenting opinion at 96. Nor do we concede, as implied by the dissent at 97, that the statutory language is ambiguous.[6] Rather, the statutory language covers a broad class of persons, providing, with exceptions not relevant here, that "it is unlawful for any person knowingly and intentionally to ... distribute ... a controlled substance." D.C.Code § 33–541(a) (Repl. 1989). *See also Minor, supra,* 623 A.2d at

1186–87 (purchasing agent defense has been eliminated); *Long v. United States,* 623 A.2d 1144, 1149 n. 10 (D.C.1993). Under controlling authority we conclude that there was sufficient evidence that Lowman was aiding and abetting the distribution of cocaine.

### B.

■ A reasonable jury could also reasonably find appellant Carter guilty of distributing cocaine. Officer Johnson testified that Carter replied affirmatively when Lowman asked him whether he had any drugs, told the officer and Lowman to wait by a fence, and then waved them to come over. He also testified that the juvenile removed something from a bag that Carter was holding. *See Mason v. United States,* 256 A.2d 565, 566–67 (D.C.1969) (supplying drugs to another, who sold them to undercover officer). Carter admitted being with the juvenile when the officer asked about drugs, and he was with the juvenile when the juvenile was arrested. The juvenile was found with the twenty dollar bill that the officer had used to buy the drugs. The jury could reasonably infer, therefore, that when Carter held out a bag from which the juvenile removed something, Carter was giving the juvenile drugs to sell to the officer. *Cf. Green, supra,* 608 A.2d at 158. The evidence gave rise as well to a reasonable inference that what the juvenile removed from the bag held by Carter had subsequently field-tested positive for cocaine. Contrary to Carter's contention, it was unnecessary for the government to show that Carter possessed drugs; the government needed only to show that he aided and abetted the juvenile's sale of the drugs. *See id.* at 157, 158, 160; *cf. Greer v. United States,* 600 A.2d 1086, 1088 (D.C.1991).

### III.

Appellant Lowman's other contentions are unpersuasive.

---

6. Hence, in our view, the dissent misapplies the rule of lenity. Dissenting opinion at 97. *See Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961) (rule of lenity "only serves as an aid for resolving an ambiguity. It is not to be used to beget one") (footnote omitted); *Luck v. District of Columbia,* 617 A.2d 509, 515 (D.C.1992); *Logan v. United States,* 483 A.2d 664, 666 (D.C.1984) (citations omitted).

**■** *Aiding and Abetting Instruction.* The trial judge did not err in giving the aiding and abetting instruction over objections by defense counsel. An aiding and abetting instruction may be given where it appears that there was a principal involved, regardless of whether the defendant is charged as a principal or an aider and abettor.[7] *Judge v. United States,* 599 A.2d 417, 420 (D.C.1991); *Stewart v. United States,* 439 A.2d 461, 463 (D.C.1981); *cf.* 22 D.C.Code § 22–105 (Repl.1989); *Davis v. United States,* 498 A.2d 242, 246 (D.C.1985). The government argued to the jury that Lowman was aiding and abetting a drug transaction. Although Lowman did not handle money or drugs, she brought the officer to the sellers. Hence, there was evidence from which the jury could reasonably find that she was not the principal but she was instead aiding and abetting a drug sale.

**■** A defendant may be found guilty of aiding and abetting if a crime was committed, the defendant assisted or participated in the crime, and she or he did so with guilty knowledge. *Wright, supra,* 508 A.2d at 918 (citation omitted); *Gillis v. United States,* 586 A.2d 726, 728 (D.C.1991); *Byrd v. United States,* 364 A.2d 1215, 1219 (D.C.1976); *see also Payton v. United States,* 305 A.2d 512, 513 (D.C.1973). These elements have been met in appellant Lowman's case. The dissent's reliance on *United States v. Salamanca,* 300 U.S.App.D.C. 384, 393, 990 F.2d 629, 638 (1993), *see* dissenting opinion at 95 n. 4, is misplaced because that case involved a defendant's mere presence during a crime whereas the evidence in the instant case showed more than mere presence. *See*

*Greer, supra,* 600 A.2d at 1088; *Creek v. United States,* 324 A.2d 688, 689 (D.C.1974); *Perry v. United States,* 276 A.2d 719, 719–20 (1971).[8]

Lowman maintains, however, that she "was not an active participant; at best only a naive person on the street, acting as an unknowing participant, i.e. a good Samaritan." The evidence did not require the jury to accept this assertion. Lowman admitted that she knowingly facilitated a drug transaction by taking the undercover officer to someone she knew was selling drugs. She inquired whether appellant Carter and the juvenile had the drugs that the officer was seeking to buy and then she remained with the officer until the drug transaction was completed. A reasonable jury could reasonably have found that her actions and presence were intended to facilitate a drug sale.

Lowman's reliance on *Creek, supra,* 324 A.2d 688, is misplaced. In *Creek* the court stated that a defendant could be found guilty of aiding and abetting a robbery where he acted as a lookout during a purse snatching, fled with the thief, and was arrested in the company of the thief. *Creek, supra,* 324 A.2d at 689. The court concluded that "[t]he inference that [the defendant's] presence by the gate [where the defendant crouched as a lookout] 'designedly encouraged,' or 'facilitated' the [crime] is clearly warranted." *Id.* Although Lowman did not flee with, and was not arrested in the company of, Carter, she did more than serve as lookout: she actively solicited the sale by conveying and matching up a willing buyer to a willing seller.

---

**7.** Lowman's reliance on *Head v. United States,* 451 A.2d 615, 626 (D.C.1982), is misplaced. In that case the court held that the trial court did not err in giving an aiding and abetting instruction *even though the defendant had been prosecuted as a principal* because the jury could have found that appellant was aiding and abetting two cohorts.

**8.** *See also Nye & Nissen v. United States,* 336 U.S. 613, 618, 620, 69 S.Ct. 766, 769, 770, 93 L.Ed. 919 (1949) (aiding and abetting theory "is well engrained in the law," person who "consciously shares in any criminal act" is an aider and abettor); *Stevenson, supra,* 608 A.2d at 733 (presence is enough to constitute aiding and abetting

if it is intended to encourage or facilitate the principal offenders' commission of the crime); *Bailey v. United States,* 135 U.S.App.D.C. 95, 98–99, 416 F.2d 1110, 1113–14 (1969) ("[p]resence is thus equated to aiding and abetting when ... it designedly encourages the perpetrator, facilitates the unlawful deed—as when the accused acts as a lookout—or when it stimulates others to render assistance to the criminal act") (footnotes and citations omitted); *see also In re T.J.W., supra,* 294 A.2d at 176 ("[the defendant] did not, at any time, avail himself of opportunities to withdraw from the scene of the criminal activity.... [B]y his continued presence he gave tacit approval and encouragement").

*Prior Convictions Instruction.* Nor do we find any reversible error as a result of the trial judge's denial of Lowman's request that the jury be instructed that the instruction on prior criminal convictions applied only to Carter. On direct examination, Carter admitted that he had previously been convicted of attempted unauthorized use of a motor vehicle. Upon completion of the direct examination, the judge instructed the jury that evidence of Carter's prior conviction could be used only to determine credibility of the defendant as a witness and did not bear on whether the defendant was guilty. While a "defendant in a criminal case is entitled to an instruction on any issue 'fairly raised by the evidence,'" *Smith v. United States*, 309 A.2d 58, 59 (D.C.1973) (citation omitted), a trial judge also retains discretion to decide the form and wording of the instruction.[9] Assuming that it would have been preferable for the trial judge to clarify that the prior conviction evidence could only be used to evaluate appellant Carter's credibility, we conclude that it must necessarily have been clear to the jury that this instruction applied only to Carter, and, therefore, that any error was harmless.

The only evidence before the jury concerning a prior conviction was Carter's prior conviction for unauthorized use of a motor vehicle; there was no such evidence concerning Lowman. Immediately after Carter's direct examination, when he admitted his prior conviction, the trial judge instructed the jury on the limited use of prior convictions in a manner that made it clear that the instruction pertained only to Carter. During the general instructions, the judge gave a similar limiting instruction on the use of prior convictions. Lowman's counsel conceded that "I think it's clear that it [the instruction] does [apply only to Carter], but I just want this jury to make sure they don't think they're hearing some mysterious instruction applying to Ms. Lowman." In addition, Carter's prior conviction for attempted unauthorized use of a motor vehicle involved a distinct offense that was not similar or related to the charge in the instant case. *Cf. Dorman v. United States*, 491 A.2d 455, 459–60 & n. 2 (D.C.1984) (en banc). The judge also instructed the jury that each defendant's guilt or innocence should be determined separately, by considering only the evidence applicable to that defendant. Under these circumstances, any prejudice that might have improperly arisen as a result of Carter's prior conviction was minimal at most.[10]

Accordingly, we affirm the judgments of conviction.[11]

SCHWELB, Associate Judge, concurring in part and dissenting in part:

The majority sustains Katrina Lowman's conviction on "an aiding and abetting theory," maj. op. at 90, but apparently finds it unnecessary to determine whether Ms. Lowman was aiding her codefendant and a juvenile to sell crack cocaine, or simply helping Officer Johnson to buy some. The omitted analysis makes a great deal of difference, for aiding and abetting the distribution of a controlled substance is a felony now subject to a mandatory minimum sentence,[1] *see* D.C.Code § 33–541(c)(1)(A) (1988); *Dupree v. United States*, 583 A.2d 1000 (D.C.1990), while aiding the buyer to possess drugs is a misdemeanor. In my opinion, the evidence, viewed in the light most favorable to the prosecution, establishes Ms. Lowman's guilt of aiding and

9. *See Fludd v. United States*, 336 A.2d 539, 541 n. 3 (D.C.1975); *Howard v. United States*, 128 U.S.App.D.C. 336, 339, 389 F.2d 287, 290 (1967).

10. *Cf. (John) Smith v. United States*, 558 A.2d 312, 314–15 (D.C.1989) (en banc) (regarding guilt by association).

11. Lowman's other contentions—that the trial judge should have instructed the jury to make clear that the principal actor instructions applied solely to Carter, and that the aiding and abetting instructions applied only to Lowman—were not raised in the trial court. *Cf. Devone v. United*

*States*, 401 A.2d 971, 973–74 (1979), *cert. denied*, 444 U.S. 876, 100 S.Ct. 160, 62 L.Ed.2d 104 (1979). We find no plain error. *See Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc).

1. Ms. Lowman, a first offender, qualified for the "addict exception," *Dupree, supra*, 583 A.2d at 1002–03, and did not receive a mandatory minimum sentence. She was nevertheless sentenced to serve a minimum of two years in prison, twice the maximum sentence for unlawful possession of cocaine.

abetting possession of cocaine, but not of helping anyone to sell it. Accordingly, I respectfully dissent from the affirmance of her conviction; I join my colleagues in holding that the evidence against Carter was sufficient.

## I.

## THE EVIDENCE

Although there were variations in evidentiary detail between the accounts provided by the defense and prosecution, the essential facts are not in dispute. There was no evidence that Ms. Lowman was out searching for buyers on behalf of Carter or the juvenile, or that she was in cahoots with either of the two in any way.[2] Officer Johnson testified that it was he who asked Ms. Lowman where he could purchase a "20 rock" of crack cocaine. According to Johnson, Ms. Lowman took him to Carter. Ms. Lowman inquired whether Carter had "20's".[3] Carter and the juvenile then sold Johnson a "rock" of cocaine, and Ms. Lowman left the scene. She never handled the drugs or the money, and there is no suggestion that she received, or expected to receive, anything of value from the principals in the sale.

On these facts, construed in the light most favorable to the prosecution,[4] Ms. Lowman's conviction could not rationally rest on a finding, beyond a reasonable doubt, that there was some prearrangement, coordinated action, or community of unlawful purpose between Ms. Lowman on the one hand and Carter and the juvenile on the other. The question fairly presented is whether one who directs a buyer to a potential seller is engaged, contrary to the common sense meaning of the term, in the *distribution* of unlawful drugs. *See Annotation, Criminality of Act Directing to, or Recommending, Source From Which Illicit Drugs may be Purchased,* 42 A.L.R.3d 1072 (1972 & Supp.1992) (hereinafter *Annotation* ). An objective resolution of that question requires careful analysis of the statutory language, legislative history, and analogous judicial precedent.

## II.

## LEGAL DISCUSSION

### A.   The Statutory Framework.

In the District of Columbia, "it is unlawful for any person knowingly or intentionally to ... distribute ... a controlled substance." D.C.Code § 33–541(a)(1) (1988). Our "aiding and abetting" statute, D.C.Code § 22–105 (1989), provides in pertinent part that

[i]n prosecutions for any criminal offense all persons advising, inciting, or conniving at *the* offense, or aiding or abetting *the*

---

**2.** As my colleagues point out, Ms. Lowman testified that she knew the juvenile and had seen Carter before but did not know him. I do not understand them to contend that this level of acquaintance (or lack thereof) establishes that she was somehow in league with one or both of them, although there may be some intimation to that effect in the majority opinion. Maj. op. at 91. If, as the better reasoned authorities hold, proof of community of unlawful purpose is required, then surely Ms. Lowman cannot be convicted, absent other evidence of collusion, simply because she knew one of the sellers and recognized the other.

**3.** Ms. Lowman testified that it was Officer Johnson who made this inquiry, but for purposes of this appeal we must accept the officer's version. *Green v. United States,* 608 A.2d 156, 158 (D.C. 1992).

**4.** As the court recently stated in *United States v. Salamanca,* 300 U.S.App.D.C. 384, 393, 990 F.2d 629, 638, (1993), in which the evidence of aiding and abetting was held to be insufficient,

[w]e do not fulfill our duty through rote incantation of the principles governing a review of sufficiency of evidence followed by summary affirmance.... *The sufficiency of the evidence warrants particular scrutiny when the evidence strongly indicates that a defendant is guilty of a crime other than that for which he was convicted, but for which he was not charged.* Under such circumstances, a trier of fact, particularly a jury, may convict a defendant of a crime for which there is insufficient evidence to vindicate its judgment that the defendant is blameworthy. Compelling evidence that a defendant is guilty of some crime is not, however, a cognizable reason for finding a defendant guilty of another crime.

(Citations omitted and internal punctuation adapted; emphasis added). In the present case, there was strong evidence that Ms. Lowman aided and abetted the *possession* of cocaine, an offense different from the one of which she was convicted. Accordingly, the need for "particular scrutiny" which the court recognized in *Salamanca* is equally imperative here.

*principal offender,* shall be charged as principals and not as accessories.... (Emphasis added.)

To establish aiding and abetting, the prosecution was obliged to prove that Ms. Lowman " 'in some sort associate[d] [her]self with the venture, that [s]he participate[d] in it as in something that [s]he wishe[d] to bring about, that [s]he [sought] by [her] action to make it succeed.' " *Brooks v. United States,* 599 A.2d 1094, 1099 (D.C.1991) (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938) (Learned Hand, J.)); *see also Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769–70, 93 L.Ed. 919 (1949) (adopting *Peoni* definition). It is not sufficient to show that Ms. Lowman aided *someone;* the government must prove that the assistance was given to "the perpetrator" of the crime. *Brooks, supra,* 599 A.2d at 1099; *see also United States v. Staten,* 189 U.S.App.D.C. 100, 108, 581 F.2d 878, 886 (1978). "In order for one to be an accomplice [or an aider or abettor] [5] [s]he must be concerned in the commission of *the specific crime with which the defendant is charged,* [s]he must be an associate in guilt of *that crime,* a participant in *that offense* as principal or accessory." *Risinger v. United States,* 236 F.2d 96, 99 (5th Cir.1956) (emphasis added). The specific crime which Ms. Lowman is alleged to have aided and abetted in this case was distribution of cocaine, and the principal offenders were her codefendant and his juvenile confederate.

If the words of the statute are accorded their ordinary everyday meaning, *see Riggs Nat. Bank v. District of Columbia,* 581 A.2d 1229, 1235 (D.C.1990), then it is difficult to see how Ms. Lowman could be found to have aided and abetted the *distribution* of cocaine.

She did not advise or incite the sellers to sell drugs, nor connive with them in any way. On the contrary, she advocated no action on their part, but simply asked Carter if he had any 20's for sale. Ms. Lowman likewise did not aid or abet the principal offenders to do anything. Rather, her significant dealings were all with the prospective buyer.

The government argues that Ms. Lowman "facilitated" the sale. This is undoubtedly true, in the sense that she made it easier for Officer Johnson to buy a packet of crack, and ultimately for the sellers to sell it. Such an argument, however, proves too much. A cab driver who transports a buyer to the scene also "facilitates" a sale in this unrestricted sense of the word. Every purchaser of drugs makes it easier, by his or her conduct, for a seller to sell. Indeed, the purchaser's role is far more vital to the sale, and encourages it in considerably greater measure, than Ms. Lowman's role of, at most, a buyer-sponsored intermediary. Accordingly, if the government's position were adopted, and if everyone who assisted a buyer of drugs were thereby rendered a distributor, then, *a fortiori,* every purchaser would also logically have to be deemed an aider and abettor to a felony, and would therefore be subject to a mandatory minimum sentence. The consequence of such a construction of the statute, however, would be "to write out of the Act the offense of simple possession, since under such a theory every drug abuser would be liable for aiding and abetting the distribution which led to his own possession." *United States v. Swiderski,* 548 F.2d 445, 451 (2d Cir.1977).[6] If the buyer is not an aider and abettor to the sale, then I do not see how we can logically hold that someone who renders assistance to the buyer can be guilty of distribution.[7]

---

5. For present purposes, I see no material difference between an accomplice and an aider or abettor. *See Christian v. United States,* 394 A.2d 1, 48 (D.C.1978) (per curiam), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *Egan v. United States,* 52 App.D.C. 384, 390, 287 F. 958, 964 (1923).

6. *Cf. Thompson v. United States,* 30 App.D.C. 352, 362–64 (1908) (pregnant woman who requested defendant to perform illegal abortion did not aid and abet abortionist and therefore was not his accomplice).

7. It is true that the former "procuring agent" defense, which immunized an agent who distributed to his own principal from prosecution for sale, has been legislatively abolished. *See Long v. United States,* 623 A.2d 1144, 1149 n. 10, (D.C.1993); *Swiderski, supra,* 548 F.2d at 451. A transfer of drugs now constitutes distribution "whether or not there is an agency relationship." D.C.Code § 33–501(9) (1988). In my view, however, this legislative change has no bearing on this case. Ms. Lowman did not distribute cocaine either to a principal or to anyone else.

At best, from the government's point of view, the statutory language is ambiguous; conceivably, it could be stretched, albeit with some difficulty, to reach the conduct of one who assists the buyer and thereby ultimately makes it easier for the seller to effect the sale. If this is so—and I think that such an expansion tends to distort the ordinary meaning of the words "aiding and abetting" and "distribution"—then the present case surely provides an appropriate occasion for invoking the rule of lenity.

"The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself." *United States v. Wiltberger*, 5 Wheat (18 U.S.) 76, 95, 5 L.Ed. 37 (1820); *Dupree, supra*, 583 A.2d at 1004 n. 1 (D.C.1990) (concurring opinion).[8] It " 'rests on the fear that expansive judicial interpretation will create penalties not originally intended by the legislature.' " *Riggs, supra*, 581 A.2d at 1262 (quoting 3 N. Singer, Sutherland, Statutory Construction, § 59.03, at 11 (4th ed. 1986)). "This policy embodies the instinctive distaste against men [and women] languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) (quoting H. FRIENDLY, MR. JUSTICE FRANKFURTER AND THE READING OF STATUTES (1967)). Distribution of cocaine is now subject to a mandatory minimum penalty which restricts the judge's traditional sentencing discretion, and application of the rule of lenity is especially appropriate. *Winters v. Ridley*, 596 A.2d 569, 573 n. 5 (D.C.1991) (per curiam) (Schwelb, J., concurring).

Dismissing the rule of lenity with a correct but patently inapposite aphorism,[9] my colleagues construe "aiding and abetting" quite broadly, and go on to treat aid directed to the buyer as though it were the far more serious offense of providing assistance to the seller. They acknowledge that there may be "humanitarian or policy considerations favor-

ing the dissent's approach," *id.* at 92, but insist that we should not concern ourselves with such considerations, and must instead leave them to the legislature. It is here, in my view, that the majority's logic demonstrably founders.

The language of the statute, as I have shown, is not so plain that the only reasonable construction of it inexorably draws the unfortunate Ms. Lowman within its ambit. If there is an ambiguity, we surely ought not to resolve it by construing a criminal statute as expansively as the majority does. Even in cases where the governing text is a good deal more favorable to the prosecution than the language of the statutes on which the majority relies here, courts need not and should not slavishly follow that text to reach an unjust result. *Mendoza v. United States*, 565 F.2d 1285, 1289–90 (5th Cir.1978). "General terms should be so limited in their application as not to lead to *injustice*, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character." *United States v. Kirby*, 74 U.S. (7 Wall) 482, 486–87, 19 L.Ed. 278 (1868) (emphasis added); *see also Consumers Union of United States v. Walker*, 79 U.S.App.D.C. 229, 230, 145 F.2d 33, 34 (1944) (quoting *Kirby* ). When a criminal statute is broadly construed in a manner which, as the majority virtually acknowledges, disregards "humanitarian" considerations, then surely this is injustice.

Justice Chase's language for the Court in *Noonan v. Bradley*, 76 U.S. (9 Wall.) 394, 407, 19 L.Ed. 757 (1869), has the ring of conviction and the force of truth:

> [W]hen an instrument is susceptible of two constructions—the one working injustice and the other consistent with the right of the case—that one should be favored which standeth with the right.

In *Noonan*, to be sure, the Court was talking about a contract between private parties.

---

8. The concurring opinion in *Dupree* was endorsed in substance by the majority. *Id.* at 1004 n. 5.

9. According to my colleagues, the rule of lenity is not to be used to "beget" an ambiguity. Maj. op. note 6. By insisting that one who has no associ-

ation with the seller, and who provides information to the buyer, nevertheless "unambiguously" aids and abets the *distribution* of cocaine, the majority hangs its hat on a truly insecure and wobbly peg. A chain is only as strong as its weakest link.

The principle so eloquently enunciated in Justice Chase's opinion, however, surely applies with even greater force to legislation, see Kirby, supra, particularly where, as here, we are dealing with a criminal statute which contains a mandatory minimum feature and which deals so harshly with the liberty of the citizen.

### B. Legislative History.

Neither party has cited any pertinent legislative history, and I am unaware of any that deals directly with the issue here presented. The materials that are available persuade me, however, that the legislature never intended to treat conduct such as Ms. Lowman's as distribution of cocaine, or as warranting the imposition of a mandatory minimum penalty.

According to the Report of the Judiciary Committee, see maj. op. at 8, a central purpose of the enactment of the local statute was to abolish the "unilateral approach" of the former Uniform Narcotics Act, which was viewed as not discriminating sufficiently between serious and less serious offenders, and to "introduce a system in which the penalty for prohibited conduct is graded *according to the nature of the offense* and the schedule of the substance involved." *See Long, supra,* 623 A.2d at 1150 n. 13 (emphasis added) (quoting Report).[10] The emphasis in the Committee Report on proportionality between crime and punishment belies any suggestion that the legislation was designed to require severe punishment, including prolonged incarceration, for an individual who, in response to a prospective buyer's inquiry, did no more than simply inform that buyer where drugs could be purchased, walk with him to a prospective seller, and inquire whether cocaine was available. The "nature"

of Ms. Lowman's offense is surely different from, and substantially less grave than, distribution in the ordinary meaning of that word.

### C. The Case Law.

According to the majority, this appeal is controlled by *Griggs v. United States,* 611 A.2d 526 (D.C.1992). I must respectfully disagree.

In that case, which was originally decided by unpublished memorandum opinion and judgment (MOJ), *id.* at 526 n. *,[11] the defendant, Griggs, led a female undercover police officer to his codefendant, James Williams, who was in possession of cocaine for sale. Evidently attempting to vouch for the officer's reliability, Griggs told Williams that the officer was Griggs' cousin. Williams then sold cocaine to the officer. Both Williams and Griggs were convicted of distribution. An impartial jury could rationally find that the only plausible reason for Griggs to represent that the officer was his cousin was in order to encourage and induce Williams to sell cocaine to her. Moreover, such a jury could reasonably conclude from Griggs' remark about his supposed relationship with the officer that Griggs was screening potential customers for Williams (albeit with less than exemplary [12] fidelity) and that he was therefore in league with Williams. Under these circumstances, the prosecution made out a sufficient case of aiding and abetting to warrant the denial of a motion for judgment of acquittal. To read *Griggs* as holding more than that, and as standing for the proposition that anyone who helps a buyer find a seller is guilty of distribution, is to extract that decision from its context.[13]

---

10. My colleagues acknowledge, maj. op. at 92, that the legislative history reflects the Council's intention to distinguish between "possession" and "distribution" and to view the latter offense as more severe. Surely a logical corollary of this distinction is to treat one who aids the seller (but is subordinate to him) more severely than one who aids the buyer or possessor (but is subordinate to him).

11. Perhaps because *Griggs* was originally an unpublished opinion which could not be cited as precedent, the court eschewed any detailed discussion of the statutory language and legislative

history, and did not deal with the numerous decisions of courts in other jurisdictions which have addressed similar issues.

12. I use this adjective, of course, from Williams' perspective rather than from my own.

13. It is true that in *Griggs,* as the majority points out, maj. op. at 91 n. 4, the defendant asked for payment from the buyer. This does not detract, however, from the decisive fact that the defendant affirmatively encouraged the seller to sell by implicitly vouching for the buyer's trustworthiness and eligibility to buy.

In the present case, on the other hand, Ms. Lowman made no representation to the sellers regarding Johnson's reliability as a potential customer, nor did she say anything else to persuade or induce them to sell. Rather, she simply asked Carter whether he had any 20's for sale. There was no evidence that she was working for (or together with) Carter or the juvenile. Indeed, if she had been one of Carter's "runners" or "jugglers," she would presumably have known what merchandise he had available, and the question which she asked Carter would have been superfluous. The scenario which the court encountered in *Griggs* was thus materially different from the situation presented here, and that decision cannot fairly be viewed as controlling.[14]

The better-reasoned decisions in other jurisdictions suggest that a conviction of distribution on these facts should not be sustained. In *Morei v. United States,* 127 F.2d 827 (6th Cir.1942), Beach, an undercover agent, contacted Platt, a physician, and asked Platt to sell him heroin. Platt stated that he did not have any, but told Beach the name and address of Morei as a potential supplier, and directed Beach to tell Morei that Platt had sent him. Beach purchased heroin from Morei, and Platt was eventually charged as an aider and abettor and the jury found him guilty.

The appellate court reversed Platt's conviction. The court explained that the prosecution was required to prove the existence of

a community of unlawful intention between [Platt] and the perpetrator of the crime. The concept of an accessory before the fact [15] presupposes *a prearrangement to do the act.*

*Id.* at 831 (citation omitted; emphasis added). The court went on to state that

[t]here was no community of scheme between him and the other defendants. They shared in no common intent or plan, nor was there any prearrangement or concert of action. Dr. Platt was paid nothing and it is not claimed that he asked for any remuneration or expected to receive anything from the claimed transaction.... This is not the purposive association with the venture that, under the evidence in this case, brings Dr. Platt within the compass of the crime of selling or purchasing narcotics, either as principal, aider and abettor, or accessory before the fact.

*Id.* at 831–32.

The *Morei* decision is now more than half a century old, but its reasoning is cogent and continues to persuade.[16] A number of courts have either explicitly followed *Morei* or adopted essentially the same reasoning. I advert briefly to a few of the decisions.

In *State v. Gladstone,* 78 Wash.2d 306, 474 P.2d 274 (1970), Gladstone gave a police informant the name of one Kent as an individu-

14. The other decisions of this court cited by the majority are even more readily distinguishable than *Griggs.* In *Green, supra,* 608 A.2d at 157, the defendant, Green, sought out a buyer and brought him to the codefendant seller. Upon his arrest, Green was found to be in possession of $297 in cash, as well as an electronic beeper. If a picture is worth a thousand words, this tangible evidence was worth a million. In the case at hand, nothing incriminating was recovered from Ms. Lowman.

In *Stevenson v. United States,* 608 A.2d 732 (D.C.1992)—another converted MOJ—Stevenson watched while his confederate, Washington, sold cocaine to an undercover officer. Washington received a pre-recorded $20 bill from the officer and handed it to Stevenson. This bill was found on Stevenson at the time of his arrest shortly thereafter. Obviously, an impartial jury could reasonably conclude that Stevenson was in league with Washington.

In *Minor v. United States,* 623 A.2d 1182, (D.C. 1993), the defendant "participate[d] in the sale *with the seller*" by bringing the seller to the buyer and by quoting the seller's price to the buyer...." *Id.* at 1186 (emphasis added). The two men were plainly working with one another, a critical factor which is altogether missing here.

15. The court characterized any difference between an "accessory before the fact" and an "aider and abettor" as unimportant for the purposes of the case. *Id.,* 127 F.2d at 831.

16. It is true, as my colleagues point out, maj. op. at 91 n. 5, that the United States Court of Appeals for the Sixth Circuit has "distinguish[ed]" *Morei* in *United States v. Winston,* 687 F.2d 832, 835–36 (6th Cir.1982). This is not astonishing, since in *Winston,* the defendant "acted as a salesman for [the seller]," "set up the sale," and quoted the seller's price to the buyer. *Id.* at 835. Any intimation that *Winston* somehow casts doubt on *Morei* is incorrect.

al who would sell marijuana. He also provided directions to Kent's home, and drew the informant a map.[17] Kent thereafter sold drugs to the informant. Following *Morei*, and quoting at length from that decision, the court held this evidence insufficient to show aiding and abetting because Gladstone did not induce, counsel or encourage Kent to sell, and because Gladstone derived no benefit, consideration or reward. *Id.* at 278–79.

In *People v. Gordon*, 32 N.Y.2d 62, 343 N.Y.S.2d 103, 295 N.E.2d 777 (1973), the defendant, Gordon, gave Cryan, an undercover trooper, the name of Newlon as a dealer in narcotics, and provided Cryan with directions to Newlon's residence. After Newlon sold marijuana to Cryan, Gordon was convicted as a "facilitator" of a felony. The Court of Appeals, in an opinion by Chief Judge Fuld in which the prosecution's theory was characterized as "unusual," *id.* 343 N.Y.S.2d at 106, 295 N.E.2d at 779, reversed Gordon's conviction. The court held, *inter alia*, that while Gordon may have been aiding Cryan to *possess* a dangerous drug, that offense was a misdemeanor only. The court concluded that there was insufficient evidence to sustain Gordon's conviction.

In *Bowles v. State*, 265 Ark. 457, 579 S.W.2d 596 (1979), Baker, an undercover officer, asked the defendant Bowles, a bartender, where he could buy large quantities of marijuana. Bowles referred Baker to Cash, and Baker purchased a large supply of marijuana from Cash. Bowles was charged and convicted as an accomplice to the delivery of a controlled substance. In reversing Bowles' conviction, the court adopted the rationale of other jurisdictions which have held that a "facilitator" of a sale of illicit drugs is not an accomplice of the seller, so long as he is interested only on behalf of the buyer. *Id.* 579 S.W.2d at 598.[18]

In *Daigger v. State*, 268 Ark. 249, 595 S.W.2d 653 (1980), undercover agents attempted to purchase LSD from Taylor, but could not agree on a price. Taylor then took the agents to Mr. and Mrs. Daigger, who effected a sale. Taylor and both Daiggers were convicted of "delivery" of LSD. The court affirmed the convictions of the Daiggers, but reversed as to Taylor. Citing its earlier decision in *Bowles, supra*, the court held that

> a man who simply introduced the buyer to the seller was not guilty of delivery. The middleman must take a more active part to be a principal *or even an accomplice*.

*Id.* 579 S.W.2d at 654 (emphasis added).

In *Davila v. Texas*, 664 S.W.2d 722 (Tex. Cr.App.1984) (en banc) Chism, an undercover agent, visited the defendant, Gloria Davila, at her residence. He told her that he wanted to buy heroin. Mrs. Davila spoke to her husband, Cosme, and told him what Chism wanted. Cosme then sold Chism four balloons containing heroin. Mrs. Davila was convicted of delivery of heroin by "constructive transfer." On appeal, the court reversed Mrs. Davila's conviction, holding that there was no proof that the contraband was under her control, and that her "act in merely relaying an offer from buyer to seller was not sufficient to prove that the seller acted at [her] 'instance or direction.'" *Id.* at 725.[19]

In *People v. Bryant*, 106 A.D.2d 650, 483 N.Y.S.2d 117 (2d Dept.1984), an undercover officer and an informant approached Bryant in a bar and indicated that they wished to purchase cocaine. Bryant pointed to a man seated in another part of the bar and said: "Go see Michael and tell him I said it's okay to serve you." *Id.* 483 N.Y.S.2d at 118. The

---

**17.** In my opinion, one who draws a map for the buyer facilitates a sale just as much as one who shows the buyer where the seller is and walks over to the scene. If Gladstone was not aiding and abetting distribution, then neither was Ms. Lowman.

**18.** Cash testified that Bowles told him that it was safe to do business with Baker. The court held this insufficient to show that Bowles facilitated the sale, rather than the purchase, of marijuana. *Id.*, 579 S.W.2d at 599.

**19.** In Texas, a person is criminally responsible for the conduct of another if he aids or attempts to aid its commission. *See, e.g., Buitureida v. State*, 684 S.W.2d 133, 144 (Tex.App.1984). The majority's attempt to distinguish the case on the ground that it did not involve "aiding and abetting," see maj. op. at 91 n. 5, is therefore unavailing.

two ostensible purchasers did so, a sale followed, and Bryant was subsequently convicted of sale of cocaine. In reversing his conviction, the court noted that

> [t]he purchase was suggested by the buyer and she paid the seller directly. There is not a scintilla of evidence to establish any previous relationship between defendant and Michael nor to show that defendant stood to profit from the sale. Under the circumstances, the judgment must be reversed and the indictment dismissed....
>
> It is well established that one who participates in a sale of illegal narcotics solely to assist the buyer and has no direct interest in the contraband being sold cannot be convicted of criminal sale of a controlled substance.

*Id.* 483 N.Y.S.2d at 118–19 (citations omitted).[20]

My colleagues seem to think it important that Ms. Lowman accompanied the officer to the scene of the sale. As noted above, however, the defendants in *Daigger, Davila* and *Bryant* were likewise where the action was. Walking over with the officer and inquiring whether Carter had "twenties" may constitute more help to the buyer than would be provided by staying away, but I do not think it can logically convert Ms. Lowman's conduct into aiding and abetting *the sale.*

---

To be sure, there are decisions sustaining convictions in comparable circumstances. *See, e.g., United States v. Tyler,* 758 F.2d 66, 70–71 (2d Cir.1985) (reversing conspiracy conviction but affirming aiding and abetting conviction because defendant who helped willing buyer to locate willing seller brought about a sale that, without his participation, would not have been made); *Haywood v. State,* 562 So.2d 297, 300 (Ala.Cr.App.1990) (defendant who brought buyer and seller together and communicated the buyer's desire to the seller thus "aided in the distribution of a controlled substance"); *Annotation, supra,* 42 A.L.R.3d at 1076–78, and authorities there cited. It is difficult to generalize, because

cases raising the issue arise in a wide variety of scenarios; two cases are seldom precisely alike. In my opinion, in any event, the courts that follow the reasoning typified by the decisions in *Morei* and *Daigger* have the better of the argument. I would join them.

### III.

### CONCLUSION

This is a case of considerable importance. In my view, the majority decision tends to frustrate the legislative design that the courts recognize the differences between various kinds of drug offenders, and that they impose punishment in each case that is appropriate to the offense. If, by pointing out a drug dealer to a purchaser and inquiring about the dealer's wares, Ms. Lowman became a distributor herself for purposes of punishment, then our prisons will continue to be filled by comparatively minor participants in the destructive drug trade. The "big enchiladas," meanwhile, seldom venture out into the street, and are far less likely to be apprehended. The result—that people like Ms. Lowman are classed as felons and sentenced to long prison terms—is not only manifestly unjust, but also contrary, at least, in my view, to the Council's intent and to the canons of construction applicable to criminal statutes.

If Ms. Lowman is guilty of distribution, what is the next stop down the line? Does a cab driver who accedes to a customer's request to drive him to a brothel thereby render himself punishable as a pimp? Is a wife subject to a mandatory minimum penalty for aiding and abetting distribution if, seeing her addict husband in the agony of withdrawal pains, and desperate to alleviate his suffering, she drives him to a dealer, who then sells him heroin? If the answer to these questions is no, then we should be careful about how "creatively" we construe our Controlled Substances Act in cases such as this.

Undercover officers frequently approach citizens like Ms. Lowman in the drug-ridden

---

**20.** In New York, as in the District, one who aids and abets another to commit a crime is liable as a principal. *People v. Van Denburg,* 107 A.D.2d 891, 483 N.Y.S.2d 836, 838 (3d Dept.1985). Accordingly, contrary to my colleagues' assertion, maj. op. at 91 n. 5, the court in *Bryant* necessarily held that the accused was not aiding and abetting the seller.

neighborhoods throughout our city in which these people have to live. Seeking to apprehend the drug traffickers who make life miserable for their neighbors, the police often ask these citizens leading questions. I have no problem with that; the officers are doing their job. Apparently, however, a less than sagacious answer to such a leading question can propel a citizen perilously near the prison gate. Before we conclude, on as little evidence as the prosecution produced against Ms. Lowman, that our elected representatives intended to treat her conduct as distribution, I suggest that we take a long hard look at the problem en banc.